No. 95-184

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA, ex rel. CELIA COBBS,

      Relator and Appellant,

  v.

MONTANA DEPARTMENT OF SOCIAL AND
REHABILITATION SERVICES,

      Respondent and Respondent.

**FILED**

NOV 21 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert S. Keller, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Allan M. McGarvey, McGarvey, Heberling,
Sullivan & McGarvey, Kalispell, Montana

      For Respondent:

          Cary B. Lund, Legal Counsel, Department of
Public Health and Human Services,
Helena, Montana

---

Submitted on Briefs:  August 24, 1995

Decided:  November 21, 1995

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The appellant, Celia Cobbs, filed an application in the District Court for the Nineteenth Judicial District in Lincoln County for a Writ of Mandate that would have directed the Department of Social and Rehabilitation Services (SRS) to disburse funds from the Industrial Accident Rehabilitation (IAR) Account for her rehabilitation expenses, as authorized by the Department of Labor. The District Court concluded that SRS had no clear duty to disburse the funds, and that Cobbs' exclusive remedy was provided by law. Therefore, the court denied her application. Cobbs appeals from the order and judgment of the District Court. We reverse.

The issue on appeal is:

Does the State Department of Social and Rehabilitation Services owe a clear legal duty to distribute funds from the Industrial Accident Rehabilitation Account when the Montana Department of Labor authorizes the distribution pursuant to § 39-71-2001, MCA (1993)?

## FACTUAL BACKGROUND

Celia Cobbs is an injured worker entitled to workers' compensation benefits. She is unable to return to her former job because of a work-related injury. She had a dispute with her employer's insurer over her right to rehabilitation benefits and filed a petition in the Workers' Compensation Court to resolve that dispute. After a trial, she settled her claim by agreeing upon a

2

rehabilitation plan with her employer's insurer. The plan called for payment from the IAR Account in the amount of $680.75 for tuition and fees, together with $250.00 per semester for books and materials during a two-year course of study at Flathead Valley Community College. The State Department of Labor, Employment Relations Division, and the Workers' Compensation Court approved the plan.

On January 13, 1994, the Department of Labor wrote to SRS and authorized the expenditure of funds from the IAR Account for the tuition, books, and materials described in the rehabilitation plan. The authorization specified that it was for expenditure of funds and that Cobbs was not seeking rehabilitation services. SRS, however, refused to disburse funds from the IAR Account based on its conclusion that Cobbs did not qualify for that Department's rehabilitation services.

Cobbs then applied to the District Court in Lincoln County for a peremptory Writ of Mandate to compel the Department of Social and Rehabilitation Services to distribute funds pursuant to her rehabilitation plan. Cobbs contended in District Court that the IAR Account was established exclusively for workers' compensation claimants and that while the funds may be used to provide rehabilitation services through SRS pursuant to § 39-71-1003, MCA, the funds could also be used pursuant to § 39-71-2001(1)(d), MCA (1993), when the Department of Labor authorizes use of the funds for expenses related to a private rehabilitation plan.

3

The District Court concluded that the IAR Account is statutorily dedicated to payment for rehabilitation services for injured workers provided by the State of Montana's vocational rehabilitation program, and that because Cobbs was not a client of that program she was prohibited from receiving funds from the Account. The District Court also held that § 39-71-1003, MCA, provides that § 53-7-106, MCA, is Cobbs' exclusive remedy for denial of SRS services.

On appeal, Cobbs points out that she did not seek rehabilitation services or payments pursuant to § 39-71-1003, MCA. She agrees that she does not qualify for those services, but contends that she is entitled to rehabilitation expenses which are related to her privately developed plan pursuant to § 39-71-2001(1)(d), MCA (1993).

## DISCUSSION

Does the State Department of Social and Rehabilitation Services owe a clear legal duty to distribute funds from the Industrial Accident Rehabilitation Account when the Montana Department of Labor authorizes the distribution pursuant to § 39-71-2001, MCA (1993)?

The issuance or denial of a writ of mandate is a matter of legal interpretation which we will review to determine whether the district court's legal interpretation is correct. *Phillips v. City of Livingston* (1994), 268 Mont. 156, 161, 885 P.2d 528, 531. A two-part standard applies to the issuance of a writ of mandate. *State ex rel.*

4

*Chisholm v. District Court* (1986), 224 Mont. 441, 443, 731 P.2d 324, 325. The writ is available when the party who requests it is entitled to the performance of a clear legal duty by the party against whom the writ is sought, and where no speedy and adequate remedy in the ordinary course of law is available. Section 27-26-102, MCA; *see State ex rel. Galloway v. City of Great Falls* (1984), 211 Mont. 354, 358, 684 P.2d 495, 497.

> A negative answer to the first question bars the issuance of the writ, and, irrespective of the answer to that question, an affirmative answer to the second, divests the court of authority to issue it.

*Chisholm*, 731 P.2d at 325.

On appeal, Cobbs contends that the District Court's denial of her application was incorrect on both grounds. First, Cobbs contends that SRS has a clear legal duty to disburse the funds from the IAR Account. Second, Cobbs asserts that the SRS appeal process pursuant to § 53-7-106, MCA, is inapplicable because she did not seek SRS services.

Cobbs contends that SRS has a clear legal duty to disburse funds pursuant to § 39-71-2001, MCA (1993), which authorizes privately developed rehabilitation plans, and therefore, that the District Court abused its discretion when it failed to find a clear legal duty on the part of SRS and denied the writ. SRS asserts that application for SRS services pursuant to § 39-71-1003, MCA, is the only route to the IAR funds, and therefore, that all recipients of IAR Account monies must independently be eligible clients of SRS

5

rehabilitation programs. We conclude that SRS's position, which was adopted by the District Court, is inconsistent with statutory law.

The SRS is statutorily required to provide "vocational rehabilitation" and "vocational rehabilitation services" pursuant to the Federal Rehabilitation Act of 1973. 29 U.S.C. §§ 701-796. These services must be provided to anyone who qualifies pursuant to SRS criteria found at § 53-7-105, MCA. Vocational rehabilitation must also be provided by workers' compensation insurers to claimants who, by virtue of a work-related injury, are "physically unable to work at the job the worker held at the time of injury." Section 39-71-2001(1)(b), MCA (1993). This is a different standard than the standard by which eligibility for SRS services is determined.

The IAR Account is provided for at § 39-71-1004, MCA. It is funded by self-insured employers, Plan II insurers, and the Department of Labor. Its purpose is to pay rehabilitation expenses of injured workers. Subsection (4) specifically provides that "[n]o part of the funds . . . shall be used in payment of administrative expenses of the department or department of social and rehabilitation services." Section 39-71-1004(4), MCA (1993). When we construe a statute, "the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. The Court is to effectuate

6

the intent of the Legislature, and if the Legislature's intent can be determined from the plain meaning of the words used in a statute, the courts may not go further and apply any other means of interpretation. *Clarke v. Massey* (Mont. 1995), 897 P.2d 1085, 1088, 52 St. Rep. 538, 540 (citing *Tongue River Elec. Co-op. v. Montana Power Co.* (1981), 195 Mont. 511, 515, 636 P.2d 862, 864).

Section 39-71-2001(1)(b), MCA (1993), provides that an injured worker who "is physically unable to work at the job the worker held at the time of the injury" is eligible for rehabilitation benefits. The Legislature enacted § 39-71-2001, MCA, in 1991 when it amended the Workers' Compensation Act by passing HB 837 which, among other changes, enacted Title 39, Chapter 71, Part 20, "Rehabilitation Benefits." Section -2001(1)(d) of the newly enacted part further provides that:

> (1) An injured worker is eligible for rehabilitation benefits if:
>    (d) a rehabilitation plan between the injured worker and the insurer is filed with the department [of Labor and Industry]. If the plan calls for the expenditure of funds under 39-71-1004 [the Industrial Accident Rehabilitation Account], <u>the department shall authorize the department of social and rehabilitation services to use the funds</u>.

Section 39-71-2001(1)(d), MCA (1993) (emphasis added).

This statute explicitly provides for the development of a rehabilitation plan which may call for "the expenditure of funds" from the IAR Account. Section 39-71-2001(1)(d), MCA (1993), also specifically directs that the "department shall authorize" the use of the funds for the rehabilitation plan.

7

SRS's argument to the contrary assumes that only its agency can provide rehabilitation services to injured workers. However, the plain language of § 39-71-1014, MCA, indicates that vocational services, including the development of a formal rehabilitation plan, may be delivered exclusively by a private rehabilitation provider. For example, that statute provides:

> (1) Rehabilitation services are required for disabled workers and may be initiated by:
> (a) an insurer by designating a rehabilitation provider and notifying the department;
>    . . . .
> (2) Rehabilitation services provided under this part [of the Workers' Compensation Act] must be delivered:
> (a) through a rehabilitation counselor certified by the board of rehabilitation certification;
> (b) by a vocational rehabilitation counselor employed by the department of social and rehabilitation services; or
> (c) by both.

Section 39-71-1014, MCA (emphasis added).

The plain language of § 39-71-1014, MCA, allows workers' compensation claimants to receive vocational rehabilitation from certified private rehabilitation providers instead of, or in addition to, SRS services. Moreover, rehabilitation provider is defined as:

> [A] rehabilitation counselor certified by the board for rehabilitation certification and designated by the insurer to the department or a department of social and rehabilitation services counselor when a worker has been certified by the department of social and rehabilitation services under 39-71-1003.

Section 39-71-1011(5), MCA (1993) (emphasis added).

8

A "rehabilitation counselor certified by the board for rehabilitation certification" is not necessarily an SRS counselor, but may be a private counselor. *See* § 39-71-1011(1), MCA (defining board of rehabilitation certification).

Thus, the plain language of §§ 39-71-1011(5) and -1014, MCA, establishes that an injured worker may receive vocational rehabilitation solely from a private provider, without using SRS counselors. Furthermore, there is no requirement that injured workers seek services from SRS--although vocational services may be provided to injured workers' compensation claimants by SRS. Therefore, §§ -1011(5), -1014, and -2001, when read together, require the conclusion that funds from the IAR Account are available for rehabilitation expenses when a "rehabilitation plan" has been developed by the insurer, claimant, and rehabilitation provider and filed with the Department of Labor, not just when SRS "services" are provided. Privately developed rehabilitation plans, as authorized by § 39-71-2001, MCA (1993), would be rendered meaningless and impossible if this Court was to interpret § 39-71-2001, MCA (1993), in a way that gave SRS a right to deny benefits to workers based on criteria other than those listed in the Workers' Compensation Act. If approval was required, whether or not the insurer and the claimant agreed to a "rehabilitation plan," the expenses could not be paid unless the claimant also developed a rehabilitation plan as a client of SRS. The filing of the rehabilitation plan with the Department of Labor would be a

9

useless exercise if the worker was required to reapply for services as an SRS client and develop a new rehabilitation plan through SRS's rehabilitation "services." Moreover, the Department of Labor's "authorization" of the expenditure of funds from the IAR Account would have no meaning if, regardless of such authority, the claimant was still required to apply for rehabilitation services through SRS. Finally, the IAR Account would serve no function for workers' compensation employers, insurers, and claimants if it was solely utilized for clients of SRS.

The Legislature does not perform useless acts. *Kish v. Montana State Prison* (1973), 161 Mont. 297, 301, 505 P.2d 891, 893. Therefore, we conclude that § 39-71-2001, MCA (1993), does afford independent access to the IAR Account for payment of expenses related to a worker's rehabilitation plan developed by the insurer, claimant, and private rehabilitation provider and filed with the Department of Labor. This access is in addition to, and independent from, the payment of expenses pursuant to § 39-71-1003, MCA. Furthermore, the Department of Labor's authorization, pursuant to § 39-71-2001, MCA (1993), creates a clear legal duty on the part of SRS to disburse those funds.

We conclude that Cobbs also meets the second requirement for a writ of mandate because no speedy and adequate remedy in the ordinary course of law was available to her.

10

_____

Carla M. Stout
_____

W. William Leaphart
Justices
_____

12