JUSTICE NELSON
specially concurring.
I concur in the resolution of the issue raised on appeal, but believe that the threshold and dispositive issue was never presented to the Worker’s Compensation Court and, therefore, is not addressed or resolved by this Court.
Reeves appeals from the decision of the Workers’ Compensation Court denying her rehabilitation benefits under § 39-71-2001, MCA (1993). Basically, Reeves contends that she is entitled to rehabilitation benefits because, on the basis of the rehabilitation plan which she proposed, her vocational goal (to obtain a masters degree in counseling) is both reasonable and attainable and in accordance with her previous education, training, etc.
Liberty Mutual contends that Reeves’ plan of obtaining a masters degree in counseling with the goal of counseling only a limited sort of clientele in Bozeman is not reasonable and has virtually no chance of success. Without going into detail, the Workers’ Compensation Court *159 appears to have adopted the view of Liberty Mutual — i.e., that Reeves’ plan is neither reasonable nor attainable.
I suggest that because of the posture in which this case was presented to the Worker’s Compensation Court by the parties, the court did not have the opportunity to rule on the threshold and dispositive legal problem here. Section 39-71-2001(l)(c), MCA (1993), provides that an injured worker is eligible for rehabilitation benefits if:
a rehabilitation plan completed by a rehabilitation provider and designated by the insurer certifies that the injured worker has reasonable vocational goals and a reemployment and wage potential with rehabilitation. The plan must take into consideration the worker’s age, education, training, work history, residual physical capacities, and vocational interests.
Section 39-71-1011(4), MCA (1993), defines a “rehabilitation plan” as:
an individualized plan to assist a disabled worker in acquiring skills or aptitudes to return to work through job placement, on-the-job training, education, training, or specialized job modification.
That same section at (5) defines a “rehabilitation provider” as:
a rehabilitation counselor certified by the board for rehabilitation certification [defined in subsection (1)] and designated by the insurer to the department or a department of social and rehabilitation services counselor when a worker has been certified by the department of social and rehabilitation services under 39-71-1003. I submit that the threshold problem in this case is that there never
was a “rehabilitation plan” before the Workers’ Compensation Court. That conclusion follows from the fact that no “rehabilitation provider” designated by the insurer ever formulated a “rehabilitation plan” while taking into consideration the requirements of the applicable statutes.
To the contrary, Liberty Mutual simply hired Susan Kern, a rehabilitation counselor and, at the outset, instructed her that she was to assist Reeves with job placement but was not to assist her in preparation of a rehabilitation plan which included further education. In other words, Liberty Mutual, up front, simply dictated that there would be no rehabilitation plan formulated by the professional person whose job it was, under § 39-71-2001(l)(c), MCA (1993), to come up with a plan. Rather, Liberty Mutual made the decision as to what rehabilitation benefits Reeves would be entitled to — i.e., job placement assistance only — and then directed the rehabilitation counselor to carry out that decision.
*160 I suggest that implicit in § 39-71-2001, MCA (1993), in general, and in subsection (l)(c), in particular, is the obligation on the part of the insurer to, in good faith, designate a “rehabilitation provider” and then to let the “rehabilitation provider” formulate a “rehabilitation plan,” taking into consideration the statutory criteria — the worker’s age, education, training, work history, residual physical capacities, and vocational interests. See § 39-71-2001(l)(c), MCA. Apian developed in accordance with that statute may include “job placement, on-the-job training, education, training, or specialized job modification,” or, presumably, any combination of those. See § 39-71-1011(4), MCA (1993).
The point is that it is the rehabilitation provider’s job to formulate the rehabilitation plan, not the insurer’s. See § 39-71-2001(l)(c), MCA (1993). If the insurer can simply dictate at the outset what the plan will or will not encompass and, coincidentally, what benefits will or will not be provided, then there is, obviously, no need for the services of a trained, experienced and certified rehabilitation provider, much less any input from the injured worker. Under those circumstances the entire statutory scheme is frustrated and the resultant “plan” is nothing less than a sham.
This interpretation is consistent with the purpose of the statute to provide rehabilitative benefits to injured workers. Moreover, I suggest that what the insurer cannot do is exactly what Liberty Mutual did in this case — i.e., refuse the claimant the opportunity for rehabilitative benefits consistent with a rehabilitation plan formulated by a rehabilitation provider in accordance with the statutory criteria and on the basis of the counselor’s professional knowledge, training and experience, and work with the claimant. That is the threshold problem here as regards Liberty Mutual.
On the part of Reeves, the statute clearly does not authorize her to come up with her own rehabilitation plan as she is not a rehabilitation provider under the statute nor has she been designated in that capacity by the insurer (assuming that she had the professional qualifications in the first place). Moreover, simply because the claimant comes up with a plan of how she wants to be rehabilitated, that does not obligate the insurer to agree with her plan nor does it obligate the department or the court to approve it.
Here, whether Reeves’ plan was unrealistic and -unworkable, given the market and the type of practice she wanted to establish was not the issue. Rather, in my view, the court was put into the position of having to simply assume that the claimant’s plan was the statutory *161 “rehabilitation plan.” I suggest that there was, in fact, no rehabilitation plan before the court as the statutory requirements for formulating such a plan had not been even minimally followed by Liberty Mutual. Furthermore, Reeves had no statutory authority to come up with her own plan.
If the parties were required to follow the statutory scheme, Liberty Mutual would be obligated to designate a “rehabilitation provider” as defined in § 39-71-1011(5), MCA (1993), and then allow the rehabilitation provider to independently work with the claimant and develop a rehabilitation plan for presentation to the insurer. Section 39-71-2001(l)(c) and (d), MCA (1993). Assuming that the rehabilitation provider and the plan certified that the injured worker had reasonable vocational goals and reemployment and wage potential with rehabilitation and that the plan is designed to accomplish those, taking into consideration the requirements of § 39-71-2001(l)(c), MCA (1993), then it seems to me, that at a minimum, the statutory framework has been honored.
Under § 39-71-2001(l)(d), MCA (1993), if the injured worker and the insurer agree with the rehabilitation plan, then the plan is filed with the department of labor and benefits are provided in accordance with the plan. If either the insurer or the claimant disagree with the rehabilitation plan, the insurer or claimant then has an avenue of review through mediation, the Workers’ Compensation Court and, ultimately, this Court.
This interpretation of the statutory framework is consistent with our recent decision in State ex rel. Cobbs v. Montana Department of Social and Rehabilitation Services (1995), [274 Mont. 157], 906 P.2d 204, 208-09, wherein we noted that the rehabilitation plan under § 39-71-2001, MCA (1993), is “developed by the insurer, claimant and rehabilitation provider and filed with the Department of Labor.” We also stated that “Entitlement to rehabilitation benefits sought pursuant to § 39-7-2001, MCA (1993), is determined by the worker, the insurer, the private ‘rehabilitation provider,’ the Department of Labor and, in the event of a dispute, the workers’ compensation mediator and the Workers’ Compensation Court.” Cobbs, 274 Mont. 157, 906 P.2d at 208-09.
In the instant case, had the statutory framework been followed, a rehabilitation plan might have been developed with and for Reeves that would have satisfied both the insurer and the claimant, or if not both, at least the court, on review. As it is, the statutes were ignored and Reeves has been denied rehabilitation benefits altogether. A no *162 less satisfactory consequence of this case is that our opinion (which is only the secondinterpretingthis section of the code), seemingly approves of the procedures used here — procedures that do not even minimally comport with the statutory scheme enacted by the legislature.
JUSTICE GRAY concurs in the foregoing special concurrence.