No. 96-280

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

WILLIAM E. RUPNOW,
d/b/a E-Z BAIL BONDING,

    Petitioner/Appellant,

    v.

CASCADE COUNTY JUSTICE
OF THE PEACE, GLADYS VANCE,

    Respondent/Respondent.

FILED

JUL 02 1997

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Robert Goff, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Steven M. Hudspeth, Great Falls, Montana

    For Respondent:

        Dirk Sandefur, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: April 24, 1997

Decided: July 2, 1997

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Appellant William Rupnow (Rupnow) appeals the decision of the Eighth Judicial District Court, Cascade County, denying his application for a writ of mandamus or, in the alternative, a writ of prohibition, as well as his claim for damages and fees. We affirm.

On appeal, Rupnow asks this Court to determine whether the District Court erred in denying his application for a writ of mandamus or, in the alternative, a writ of prohibition.

The facts of this case are not in dispute. Rupnow was a licensed bail bondsman who operated in the Cascade County District Court, the Cascade County Justice Court, and the Great Falls City Court. His business involved providing sureties to various defendants appearing in the above-listed courts. Since Rupnow provided a surety on behalf of a defendant as a guarantee that the defendant would appear in court as scheduled, he had a vested interest in ensuring the bonded defendant did not flee the court's jurisdiction. If the defendant fled, the judge could order the posted bond to be forfeited pursuant to § 46-9-503(2), MCA. For this reason, Rupnow sometimes rearrested bonded defendants whom he felt presented a flight risk and returned them to custody, thereby protecting the posted bond. The return of a defendant in this manner is statutorily authorized by § 46-9-510, MCA, which

2

provides that "the surety company may arrest the defendant and surrender the defendant to the court or any peace officer of this state." Section 46-9-510(1)(b), MCA. When Rupnow arrested flight-risk defendants, however, he generally returned them to the Cascade County Detention Center (the Detention Center).

The Detention Center operated under a federal cap imposed due to concerns regarding overcrowded conditions. Due to the federal cap, the Detention Center was absolutely prohibited from housing more than a given number of individuals at any one time. If a defendant was returned to the Detention Center by a bondsman and the federal cap prohibited the Detention Center from detaining him, the Center generally released the defendant on his own recognizance. While the supervisor of the Detention Center was a sworn peace officer as defined by § 7-32-303, MCA, the vast majority of detention officers employed at the Center were not. Therefore, the surrender of a defendant to the Detention Center usually was not a surrender to the court or to a peace officer, as mandated by § 46-9-510(1)(b), MCA.

Gladys Vance (Judge Vance) is a Justice of the Peace for Cascade County. She became increasingly frustrated with Rupnow's practice of surrendering defendants to the Detention Center without notifying her court. Certain defendants, returned to custody as flight risks, would then be released on their own recognizance and disappear. When such defendants were surrendered to the Detention Center without notice to Judge Vance, she had no opportunity to attempt to make alternate arrangements to keep them in custody.

In mid-December, 1996, after another such surrender, release and consequent disappearance, Judge Vance issued an order declaring that her court would no longer accept further bail bonds from Rupnow. Judge Vance intended by this order to obtain Rupnow's assurances that he would stop surrendering defendants to the Detention Center employees, but would instead surrender them to her court or to peace officers, in strict compliance with § 46-9-510(1)(b), MCA.

Upon receiving notice of the order, Rupnow did not attempt to contact Judge Vance to discuss the situation or to have the order rescinded. Instead, he contacted his attorney, who filed in the District Court a petition for a writ of mandamus or, in the alternative, a writ of prohibition to compel Judge Vance to accept Rupnow's bail bonds. Rupnow also asserted that Judge Vance's issuance of the order without notice or a prior hearing violated his constitutional right to procedural due process.

On January 2, 1996, the District Court scheduled a hearing in the matter and, pending the hearing, ordered Judge Vance to accept Rupnow's bonds. Following an evidentiary hearing on April 18, 1996, the District Court concluded that Judge Vance possessed the inherent judicial authority to issue the order in question. The District Court consequently declined to issue a writ of mandamus or prohibition. It also denied Rupnow's claim for damages, fees, and costs. Rupnow appeals.

Rupnow asks this Court to determine whether the District Court erred in refusing to issue either a writ of mandamus or a writ of prohibition in this matter. The issuance or denial

4

of a writ of mandamus or a writ of prohibition calls for a conclusion of law which this Court reviews to determine if it is correct. Franchi v. Jefferson County (1995), 274 Mont. 272, 275, 908 P.2d 210, 212; Becky v. Butte-Silver Bow School Dist. No. 1 (1995), 274 Mont. 131, 906 P.2d 193.

The writ of mandamus and the writ of prohibition are two sides of the same legal coin; the writ of prohibition is the counterpart of the writ of mandamus. Kimble Properties v. Dept. of State Lands (1988), 231 Mont. 54, 56, 750 P.2d 1095, 1096. Generally, the purpose of a writ of mandamus is to compel a certain action, while the purpose of a writ of prohibition is to bar the performance of a certain action. Goyen v. City of Troy (1996), 276 Mont. 213, 223, 915 P.2d 824, 830 (citing Awareness Group v. Board of Trustees of School Dist. No. 4 (1990), 243 Mont. 469, 475, 795 P.2d 447, 451). Both the writ of mandamus and the writ of prohibition are governed by statute.

Section 27-26-102, MCA, provides:

A writ of mandamus may be issued by the supreme court or the district court or any judge of the district court to any lower tribunal, corporation, board, or person to compel the performance of an act that the law specially enjoins as a duty resulting from an office, trust, or station or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is unlawfully precluded by the lower tribunal, corporation, board, or person. The writ must be issued in all cases in which there is not a plain, speedy, and adequate remedy in the ordinary course of law.

Similarly, § 27-27-102, MCA, provides:

A writ of prohibition may be issued by the supreme court or the district court or any district judge to any lower tribunal or to a corporation, board, or person in all cases in which there is not a plain, speedy, and adequate remedy in the

5

ordinary course of law. The writ is issued upon an affidavit on the application of the person beneficially interested.

The above statutes have been interpreted to mean that a writ is available when the party who requests it is entitled to the performance of a clear legal duty, and where there is no speedy and adequate remedy in the course of law. Franchi, 908 P.2d at 212 (citing State ex rel. Cobbs v. Dept. of Social and Rehabilitative Services (1995), 274 Mont. 157, 906 P.2d 204). Here, the District Court correctly declined to issue a writ because Rupnow failed to prove the existence of a clear legal duty that would justify its issuance.

Rupnow points out that this Court held in Wilshire Insurance Co. v. Carrington (1977), __ Mont. __, 570 P.2d 301, that Montana law "mandate[s] approval by courts of all bonds offered by those commercial sureties properly authorized to do business in this state." Wilshire, 570 P.2d at 304. Since it is undisputed that Rupnow is a properly licensed surety authorized to do business in Montana, he argues that Judge Vance exceeded her authority in refusing to accept his bonds. We disagree. Wilshire mandates acceptance of proper bonds from a surety who is "authorized to do business by the state commissioner of insurance and [who] has in all other respects complied with  statutes regulating the bail bond business." Wilshire, 570 P.2d at 303-04 (emphasis added). Rupnow, however, did not comply with the statutes regulating the bail bond business.

As noted above, § 46-9-510, MCA, provides that "a surety company may arrest the defendant and surrender the defendant to the court or any peace officer in this state." Section 46-9-510(1)(b), MCA. The District Court concluded that Rupnow's practice of leaving

6

defendants at the Detention Center did not constitute a surrender to a peace officer, as mandated by law. In asserting that the District Court erred, Rupnow argues that a surrender to the Detention Center is, in effect, a "constructive" or "symbolic" surrender to a peace officer, because a peace officer supervised the Detention Center and because other peace officers worked nearby. In support of this contention, Rupnow cites the Oklahoma case of State v. Sims (Okla.1984), 690 P.2d 1052, for the proposition that a symbolic surrender is enough to allow a bondsman to avoid forfeiture of the posted bond.

While Sims may be the law in Oklahoma, it is not the law in Montana. This Court has never held that the statute in question may be complied with by anything other than actual surrender to the court or to a peace officer. The concept of "symbolic surrender," as opposed to actual surrender, contravenes this Court's oft-stated principle of statutory interpretation that the plain language of a statute controls and a statute should, whenever possible, be interpreted to mean exactly what it says. State v. Gatts (1996), 928 P.2d 114, 117, 53 St.Rep. 1042, 1044; Thomas Bros. v. Cargill, Inc. (1996), 276 Mont. 105, 110, 915 P.2d 226, 229. Furthermore, and contrary to Rupnow's assertion, the requirement that he strictly comply with this statute is not the exaltation of form over substance.

The surrender of a previously bonded defendant to the court or to a peace officer ensures the defendant is properly returned to the custody of the State. Rupnow's practice of leaving defendants at the Detention Center resulted in Judge Vance being unable to properly track individuals who were due to appear in her court. Her frustration with her lack of

7

control over defendants supposedly under her jurisdiction in turn prompted her refusal to accept any more of Rupnow's bonds until the situation was rectified.

Had Rupnow been properly surrendering defendants in compliance with the dictates of § 46-9-510, MCA, and otherwise complying with the surety laws of this state, Judge Vance would have been obligated to accept his bonds. Wilshire, 570 P.2d at 303. But since Rupnow was not complying with the surety laws, Judge Vance had no duty to accept his bonds. Absent a clear legal duty, a writ of mandamus may not issue. Franchi, 908 P.2d at 212. Absent a clearly unlawful act by a public official, a writ of prohibition may not issue. Kimble Properties, 750 P.2d at 1096. Accordingly, the District Court did not err in refusing to issue a writ of mandamus or prohibition in this matter.

Rupnow also argues that the District Court erred in not awarding him damages, costs, and fees. He notes that § 27-26-402, MCA, and § 27-27-104, MCA, allow the award of damages if a writ should issue. In this case, however, we have determined that the District Court correctly declined to issue a writ. Since no writ issued, Rupnow is not entitled to an award of damages or costs.

Affirmed.

William E. Hunt
Justice

We Concur:

J. A. Turnage
Chief Justice

8

_____

_____
Justices

Justice Terry N. Trieweiler specially concurring.

I concur with the majority's decision to affirm the District Court; however, I disagree with the reasons given for the majority opinion. Specifically, I disagree with the majority's conclusion that Rupnow's presentation of a bailed defendant to the Cascade County Detention Center violated § 46-9-510(1)(b), MCA, which requires that arrested defendants be surrendered to "the court or any peace officer of this state."

The Sheriff of Cascade County is the administrator of the Cascade County Detention Center by law. *See* §§ 7-32-2120(2) and -2121(7), MCA. In this case, the Sheriff administered the Cascade County Detention Center through the senior deputy on his staff who directly supervised the Center and its employees. Section 7-32-303(1), MCA, defines "peace officer," as used in § 46-9-510(1)(b), MCA, to include "a deputy sheriff." Therefore, when Rupnow delivered the defendant to the Detention Center, he delivered him to the direct supervision of a deputy sheriff and completely satisfied his statutory obligation. Judge Vance's dispute was with the manner in which the Sheriff's Department handled the matter after Rupnow performed his obligation. Rupnow was simply caught in the cross-fire between the Justice of the Peace Court and the Cascade County Sheriff's Office.

To hold that presentation of defendants to employees of the Detention Center under the direct supervision of a deputy sheriff does not satisfy the requirement in § 46-9-510, MCA, that defendants be surrendered to a "peace officer," exalts form over substance and defeats the purpose of the statute, which is to assure that the defendant is delivered to an

10

authority who can detain him and assure his presence at further judicial proceedings. Where could that purpose be more logically accomplished than at a county detention center?

I would affirm the District Court because the petitioner, Rupnow, has basically received the relief he sought in his petition. His authority to issue bail bonds was suspended by Judge Vance on December 14, 1995. On January 2, 1996, the District Court issued a temporary order requiring that Judge Vance accept Rupnow's bonds in the future. She apparently complied with that order and has continued to accept Rupnow's bonds to this date. By the time that a hearing was held in the District Court on February 29, 1996, there is no indication from the record that Judge Vance and Rupnow had not resolved their differences and that a writ of mandamus was necessary.

Furthermore, Rupnow's entitlement to damages pursuant to § 27-26-402, MCA, is questionable in light of the inherent authority of the Justice of the Peace pursuant to § 3-1-111(5), MCA, and the immunity granted during the exercise of her official duties pursuant to § 2-9-112(2), MCA.

Finally, a writ of prohibition was simply not available based on the plain language of § 27-27-101, MCA, which limits the writ's availability to situations in which a tribunal is acting in excess of its jurisdiction. Based on the authority granted by § 3-1-111(5), MCA, I conclude that Judge Vance, although proceeding based on a misapplication of the law, was not acting in excess of her jurisdiction.

For these reasons, I would affirm the judgment of the District Court; however, I do not agree with the reasons for which the majority has done so.

_____
Justice

July 2, 1997

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Steven M. Hudspeth
Attorney at Law
201 Galleria Bldg., 104 Second St. So.
Great Falls, MT 59401-3645

Brant Light, County Attorney
Dirk M. Sandefur, Deputy
Cascade County Courthouse
Great Falls, MT 59401

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy