No. 81-314

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

STATE OF MONTANA,

Plaintiff and Appellant,

vs.

GERMAINE D. CONRAD and
ROBERT F. PALMER,

Defendants and Respondents.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula
Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert L. Deschamps, III argued, Missoula, Montana

For Respondents:

Moses Law Firm, Billings, Montana
Charles F. Moses argued, Billings, Montana
Edward A. Cummings argued, Missoula, Montana

---

Submitted: October 19, 1981

Decided: APR 1 2 1982

Filed: APR 1 2 1982

_Thomas J. Kearney_
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from an order denying the State's motion for leave to file an information charging the defendants with official misconduct. We affirm.

The facts disclose that defendant Robert Palmer was sworn in as a Missoula County Commissioner on the morning of January 5, 1981. Defendant Germaine Conrad was already a County Commissioner. The third County Commissioner was Barbara Evans. Charles Brooke was the Commission's administrative officer.

Later on that same day, after Palmer had been sworn in, he and Conrad met to discuss a reorganization plan for staff personnel. Following the meeting, Brooke was directed to make up documents to outline and implement the plan that had been approved by Conrad and Palmer. Brooke was to have the supporting documents prepared in time for the commissioners' meeting scheduled for the next day, January 6. At that time the plan was to be presented to the third commissioner, Barbara Evans. Evans did not participate in any of the discussions. Both respondents admit they consciously excluded Evans from the discussions and did not want her to know about them or the reorganization plan prior to the January 6 board meeting.

Thereafter, the incident was investigated by the Missoula County Attorney and the Attorney General. They concluded that there was probable cause to believe that there had been a violation of Montana's open meeting law and the official misconduct statute, section 45-7-401(1)(e), MCA. The pertinent open meeting statutes and the official misconduct statute are set out below:

-2-

"OPEN MEETINGS

"2-3-201. <u>Legislative intent--liberal con-
struction.</u> The legislature finds and declares
that public boards, commissions, councils,
and other public agencies in this state exist
to aid in the conduct of the peoples' busi-
ness. It is the intent of this part that
actions and deliberations of all public
agencies shall be conducted openly. The
people of the state do not wish to abdicate
their sovereignty to the agencies which serve
them. Toward these ends, the provisions of
the part shall be liberally construed.

"2-3-202. <u>Meeting defined.</u> As used in this
part, 'meeting' means the convening of a
quorum of the constituent membership of a
public agency, whether corporal or by means
of electronic equipment, to hear, discuss, or
act upon a matter over which the agency has
supervision, control, jurisdiction, or
advisory power.

"2-3-203. <u>Meetings of public agencies to be
open to public--exceptions.</u> (1) All meetings
of public or governmental bodies, boards,
bureaus, commissions, agencies of the state,
or any political subdivision of the state or
organizations or agencies supported in whole
or in part by public funds or expending
public funds shall be open to the public.

". . .

"45-7-401. <u>Official misconduct.</u> (1) A public
servant commits the offense of official
misconduct when in his official capacity he
commits any of the following acts:

". . .

"(e) knowingly conducts a meeting of a public
agency in violation of 2-3-203."

On March 6, 1981, the County Attorney filed an affi-

davit and motion for leave to file an information charging

the defendants with official misconduct. The affidavit set

forth facts essentially as outlined above. On April 27,

1981, the District Court denied the State's motion by an

opinion and order. This appeal followed.

The issues on appeal are:

1. Whether the allegations in the affidavit estab-

lish probable cause that the defendants committed the crime charged.

2. Whether section 45-7-401(1)(e), MCA, is void for vagueness.

We affirm the trial court's decision and find the State's motion for leave to file an information was properly denied.

Initially, we find the affidavit establishes probable cause of a violation of Montana's open meeting law. The allegations in the affidavit must be taken as true. See, Little v. Rhay (1973), 809 Wash.App. 725, 509 P.2d 92, and State v. Wolfe (1968), 156 Conn. 199, 239 A.2d 509. These allegations directly allege that Brooke's plan was approved by Palmer and Conrad on January 5 and that "both [Palmer and Conrad] admitted that they consciously excluded Evans from their discussions and did not want her to know about them or their reorganization plan prior to the January 6th Board Meeting." We have previously held that a county commissioners' meeting conducted between two commissioners by telephone in which the third commissioner had no notice and did not participate violated Montana's open meeting law. Board of Trustees etc. v. Board of County Commissioners (1980), ____ Mont. _____, 606 P.2d 1069, 37 St.Rep. 175.

In Board of Trustees, supra, we held:

> "The record also indicates that due to the framework in which the meeting was held, i.e., by means of telephone conversation, and due to the fact that Commissioner McClintock was not informed of the meeting, it was not an 'open meeting' as required in Montana. . .
>
> "This type of clandestine meeting violates the spirit and letter of the Montana Open Meeting Law." 606 P.2d at 1073, 37 St.Rep. at 180.

Having found that probable cause existed under the allegations of the affidavit, we next consider whether section 45-7-401(1)(e), MCA, is void for vagueness. In doing so we note the legislative history of the open meeting law contained in the District Judge's scholarly opinion and order:

"Montana's 'open meeting law' (Sections 2-3-210, et seq.) was passed in 1963 (Chapter 159). Its first section stated:

"'Section 1. The legislature finds and declares that public boards, commissions, councils, and other public agencies in this state exist to aid in the conduct of the people's business. It is the intent of this act that actions and deliberations of all public agencies shall be conducted openly. The people of the state do not wish to abdicate their sovereignty to the agencies which serve them. Toward these ends, the provisions of the act shall be liberally construed.'

"This section, heavily plagarized from a 1953 California statute (Section 54950), added to that statute the reference to 'deliberations.' The second section of our statute (now Section 2-3-203) provided in pertinent part:

"'All meetings of public or governmental bodies . . . at which any action is taken . . . shall be open to the public' (with exceptions).

"This mandatory section did not deal with 'deliberations' at all. The statute did not define such things as 'action,' 'deliberation,' 'meeting' or 'open' and it provided for no notice requirements. No sanctions were suggested.

"Sanctions were added by the 1975 legislature (Chapter 474) by the addition of a subsection (e) to R.C.M. Section 94-7-401 (now 45-7-401, the official misconduct criminal statute passed as part of the 'new' criminal code in 1973 (Chapter 513)), which then provided in pertinent part:

"'A public servant commits the offense of official misconduct when, in his official capacity, he . . . knowingly conducts a meeting of a public agency in violation of

-5-

section 82-3402 [2-3-203].'

".  .  .

"Having in 1975 incorporated the mandatory
provision of the open meeting law in the
criminal code by section numbered reference,
thereby making its violation criminal and
providing a penalty therefor, the legisla-
ture in 1977 (Chapter 567) got to tinkering
with the open meeting law and the incorpor-
ated section. As to that section, they
removed the words 'at which any action is
taken' from the language quoted above. Thus,
while the original section required that
meetings at which action was taken be open,
the section as amended required that all
public meetings be open, whether action was
taken or not. But in the same chapter the
legislature provided, for the first time, a
definition of the term 'meeting' in a newly
designated and numbered R.C.M. Section (83-
3404, now 2-3-202):

"'As used in this chapter, "meeting" means
the convening of a quorum of the constituent
membership of a public agency, whether
corporal or by means of electronic equipment,
to hear, discuss or act upon a matter over
which the agency has supervision, control,
jurisdiction or advisory power.'

"It will be noted, inter alia, that a quorum
was required and that the purpose of the
meeting could be to hear or discuss as well
as to act. This Chapter also made voidable
any discussion made in violation of the act.
In this amendment of the open meeting law, no
reference was made to the criminal code,
either in the title or the body of the act."

In Connally v. General Construction Co. (1926), 269
U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322, the United States
Supreme Court established a standard for the determination
of vagueness which has been followed to this day:

"That the terms of a penal statute creating a
new offense must be sufficiently explicit to
inform those who are subject to it what con-
duct on their part will render them liable to
its penalties, is a well-recognized require-
ment, consonant alike with ordinary notions
of fair play and the settled rules of law."
269 U.S. at 391, 46 S.Ct. at 127, 70 L.Ed. at
328.

The Court reiterated this standard in Winters v. New

-6-

York (1948), 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840, quoting from State v. Diamond (1921), 27 N.M. 477, 202 P. 988, 20 A.L.R. 1527:

> "'Where the statute uses words of no determinative meaning, or the language is so general and indefinite as to embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were intended to be made criminal, it will be declared void for uncertainty.'" 333 U.S. at 516, 68 S.Ct. at 670-71, 92 L.Ed. at 850.

This Court has established a standard similar to that used in Connally and Winters. In State v. Perry (1979), ___ Mont. ___, 590 P.2d 1129, 36 St.Rep. 291, quoting from State ex rel. Griffin v. Greene (1937), 104 Mont. 460, 67 P.2d 995, we held that "unless [a statute] is sufficiently explicit so that all those subject to the penalties may know what to avoid, it violates the essentials of due process." 590 P.2d at 1132, 36 St.Rep. at 294.

It is also clear that no person should be required to guess at whether a contemplated action is criminal. The United States Supreme Court has stated the principle in the following language:

> "As a matter of due process, 'no one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.'" Hynes v. Mayor of Oradell (1976), 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243, 253.

Similarly, in Connally, supra, the Court said:

> "And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." (Citations omitted.) 269 U.S. at 391, 46 S.Ct. at 127, 70 L.Ed. at 328.

We hold that section 45-7-401(1)(e), MCA, violates these standards.

It is unclear whether the 1977 legislature, in enacting its broad definition of "meeting" to include discussions as well as actions (section 2-3-202, MCA), intended to amend the criminal statute under which these commissioners were charged (section 45-7-401(1)(e), MCA), to encompass the expanded scope of the open meeting law. There is no express legislative intent to do so.

Men of common intelligence could differ in their opinion as to whether the broad "meeting" definition enacted in 1977 was incorporated in the 1975 amendment to the criminal statute. The fact that a lawsuit has arisen over the interpretation of this statute underscores this difference of opinion. Accordingly, any attempt at resolution of this difference of opinion would necessarily involve guesswork and speculation, a fatal defect in any criminal statute. It is simply not clear what constitutes the prohibited conduct.

The State argues that section 1-2-108(2), MCA, disposes of the problem. That statute provides:

"(2) A specific or presumed reference to a title, chapter, part, section, or subsection of the Montana Code Annotated is presumed to be a reference to that title, chapter, part, section, or subsection as it may be amended or changed from time to time. This presumption may be overcome only by a clear showing that a subsequent amendment or change in the title, chapter, part, section, or subsection is inconsistent with the continued purpose or meaning of the section referring to it."

The above statute was enacted in 1979 and immediately precedes section 1-2-109, MCA, which states that no Montana law is retroactive unless expressly declared so.

The difficulty with the State's argument becomes obvious in light of section 1-2-109, MCA. To apply a 1979 enactment to a law passed in 1977 (the "meeting" definition) would clearly be retroactive. Every reasonable doubt is resolved against retroactive operation of a statute. Penrod v. Hoskinson (1976), 170 Mont. 277, 552 P.2d 325.

For the above reasons we hold that section 45-7-401(1)(e), MCA, is void for vagueness and affirm the District Court's denial of the State's motion for leave to file an information.

_____
Chief Justice

We concur:

_____


_____


_____
Justices

_____
Honorable B. W. Thomas, District Judge, sitting in place of Mr. Justice John C. Sheehy

-9-

Mr. Justice Gene B. Daly:

I concur in the result.

_____
                Justice