No.   90-004

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

_____

THE AWARENESS GROUP, an Association
of Concerned Citizens of Park County,
and K. A. FRIEDLY, its Chairman,

Plaintiffs and Appellants,

v.

BOARD OF TRUSTEES OF SCHOOL DISTRICT
NO. 4, a School District existing in
Park County duly organized under the
Laws of the State of Montana,

Defendant and Respondent.

_____

APPEAL FROM:   District Court of the Sixth Judicial District,
               In and For the County of Park,
               The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Robert Kolesar, Bozeman, Montana


For Respondent:

Sol Lovas and Laurence R. Martin, of Felt, Martin,
Frazier & Lovas, Billings, Montana

_____

Submitted on Briefs:   April 26, 1990

Decided:   July 12, 1990

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant Awareness Group appeals from the order of the District Court, Sixth Judicial District, Park County, dismissing appellant's petitions for preliminary injunction, writ of prohibition and writ of mandamus. We affirm.

The issues on appeal are:

1) Whether the appellant has standing to sue under § 27-19-104, MCA.

2) Whether the District Court erred in dismissing appellant's applications for preliminary injunction, writ of prohibition, and writ of mandate on the basis of mootness because the remedy requested, that an election be held before respondent purchased certain land, could no longer be granted since the land had already been purchased.

3) Whether the District Court erred in denying appellant's applications for preliminary injunction, writ of prohibition, and writ of mandate which requested that respondent be enjoined from spending the fire insurance monies on the development of the purchased land without first getting approval from the voters.

4) Whether the findings of the District Court are clearly erroneous.

Prior to 1965, Park County High School was located in Livingston, Montana, at 5th and Callender. In 1959, William C. McLeod transferred real property to "Park County High School District No. 1." This real property consisted of land located in Livingston known as the McLeod Island site.

In 1965, Park County High School was unified with School District No. 4 of Park County, which assumed the operation of the high school. Subsequently, School District No. 4 decided to build a new high school on the McLeod Island site. The Board of Trustees of School District No. 4, acting as the "Board of Trustees of High

2

School District No. 1", submitted to the voters a bond issue to finance this new high school. The bond issue was approved.

After the new high school was built, the old Park County High School was converted into the Livingston Middle School.

In 1971, the school laws of Montana were recodified. As a result, the elementary and high school districts were separated into two legal entities consisting of Elementary School District No. 4 (School Board) and High School District No. 1. The members of the two school boards were the same except that the high school board had two additional trustees representing a geographical area beyond that of the School Board. These additional trustees were to vote with the School Board trustees on high school matters.

In 1985, the Livingston Middle School burned down. In 1987, the School Board proposed using the fire insurance proceeds to build a new middle school as an annex to the new high school located on the McLeod Island site. Site approval of the plan was submitted to the voters and was narrowly approved. The School Board subsequently decided to abandon the plan to build the middle school as an annex to the high school.

The School Board then proposed purchasing land owned by Edward Boehm and John C. Sheehy located directly across the county road from the Livingston High School, to build a kindergarten through eighth grade school. The building of this new school would have cost in excess of the available insurance proceeds from the fire and so, in February of 1989, the School Board held a bond issue election to provide for these additional funds. This bond issue was defeated.

The School Board then proposed building just a middle school on the Boehm-Sheehy land. This proposal was approved by the trustees and Buy-Sell Agreements with Boehm and Sheehy were executed on April 4, 1989.

On May 26, 1989, appellant filed a complaint alleging that respondent, Board of Trustees of School District No. 4, (School Board), had violated appellant's civil right to vote by failing to hold an election on the purchase of a building site for a new

3

middle school and subsequent construction as required by §§ 20-6-603 and -621, MCA. Additionally, appellant presented applications for a temporary restraining order and a preliminary injunction. Both applications requested the District Court to restrain the respondent from purchasing the Boehm-Sheehy land. The request for a temporary restraining order was denied on May 26, 1989.

On May 31, 1989, before respondent had filed an answer, appellant filed an amended complaint. Appellant also filed an application for a writ of prohibition requesting the court to enjoin respondent from purchasing the Boehm-Sheehy land because such a purchase, without an election, was outside respondent's authority. The applications for preliminary injunction and writ of prohibition were supplemented on July 13, 1989. A show cause hearing was set for July 24, 1989.

Prior to the hearing, respondent closed the purchase on the properties: The Boehm land on June 2, 1989, and the Sheehy land on June 19, 1989.

The show cause hearing regarding the preliminary injunction and the writ of prohibition began on July 25, 1989, and was continued to and concluded on August 8, 1989. At the hearing, appellant also presented an application for a writ of mandamus requesting the court to compel the respondent to perform its statutory duty to hold an election to approve school site selection and building costs.

The District Court denied appellant any relief and entered its Finding of Facts and Conclusions of Law and subsequent order. Appellant appeals that order.

The first issue is whether appellant has standing to sue under § 27-19-104, MCA.

Section 27-19-104, MCA, discusses the standing of "a citizen' [sic] group or other public interest association" to sue for injunctive relief when the individual members of the group allege in the complaint that an injury has occurred to their property or civil rights. Section 27-19-104, MCA, states that:

4

> Whenever an action for injunctive relief is initiated by a citizens' [sic] group or other public interest association and it appears by the complaint that there is an injury to a property or civil right of individual members of the association, which injury is distinguishable from an injury to the public generally, the names and addresses of injured members and a statement of injury shall be provided in the complaint. An injunction may not be granted unless such information is provided in the complaint.

In this case, appellant has standing to sue under the statute. Appellant has alleged that respondent has violated its civil right to vote by denying its individual members their right to vote. Therefore, as is required by § 27-19-104, MCA, in order to obtain injunctive relief, appellant must include the following within the complaint: (1) Some indication that the injury to its individual members is different than that of the general public and, (2) the names and addresses of those members who have been uniquely injured. Respondent alleges that appellant has failed to comply with these requirements.

The right to vote is an individual constitutional right. Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). Although appellant is trying to get the issues of site and construction approval for the Livingston middle school on the general voting ballot, if respondent is statutorily required to submit these issues to the voters, failure to do so significantly effects the constitutionally protected right to vote of each individual member of appellant organization. As this Court has held in the application of § 27-19-104, MCA, when the "alleged injury [is] coextensive with the injury of the public generally," standing is appropriate. Montana Wildlife Federation v. Sager, 190 Mont. 247, 255, 620 P.2d 1189, 1194 (1980). Although the general public right to vote is coextensive with that of appellant, appellant has standing to sue because the individual members have standing to sue based upon their individual right to vote.

Appellant is not required to provide the names, addresses and a statement of the respective injuries of the individual members

5

of appellant organization if "[n]o damages for individual injuries are sought in the complaint." Sager, 620 P.2d at 1194. Because appellant has not asked for damages but only that the issues of site and construction approval for the Livingston middle school be submitted to the voters, appellant has complied with the statutory requirements of § 27-19-104, MCA, and, therefore, has standing to sue.

The second issue is whether the District Court erred in dismissing appellant's applications for preliminary injunction, writ of prohibition and writ of mandate on the basis of mootness because the remedy requested, that an election be held before respondent purchased certain land, could no longer be granted since the land had already been purchased.

The District Court properly dismissed appellant's initial applications for preliminary injunction and writ of prohibition, filed on May 26, 1989, and May 31, 1989, respectively, on the basis of mootness because the relief requested could not be granted. A portion of appellant's application for writ of mandate, filed on August 8, 1989, was also properly dismissed on the basis of mootness. All applications requested that respondent be prevented from purchasing the Boehm-Sheehy land without submitting such purchase to the voters. At the time of hearing on July 25, 1989, the land had already been purchased.

The central issue in resolving a mootness question is whether "a change in the circumstances that prevailed at the beginning of litigation has forestalled the prospect for meaningful relief." Zoning Board of Adjustment v. DeVilbiss, 729 P.2d 353, 356 (Colo. 1986). See generally Billings Assoc. v. State Board of Plumbers, 184 Mont. 249, 602 P.2d 597 (1979); Dutton v. Rocky Mountain Phosphate, Inc., 152 Mont. 352, 450 P.2d 672 (1969). If there can be no meaningful relief, the issue before the court is moot. Since meaningful relief is determinable by a particular set of facts, a finding of mootness can only occur on a case-by-case basis.

Generally, the purpose of a preliminary injunction and a writ of prohibition is to direct a party to refrain from performing

6

certain activities until further order of the court. Sections 27-19-101 and 27-27-103, MCA. More specifically, the purpose of an preliminary injunction is to "requir[e] a person to refrain from a particular act" until further action by the court. Section 27-19-101, MCA. The purpose of a writ of prohibition is to direct "and command [a] party [who is without jurisdiction or has exceeded its jurisdictional authority] to desist or refrain from further proceedings . . . until further order of the court." Section 27-27-103, MCA. See also § 27-27-101, MCA.

In this case, in its applications for preliminary injunction and writ of prohibition, appellant specifically asked that respondent be enjoined from purchasing the Boehm-Sheehy land. This land had been purchased prior to the show cause hearing on the applications. The court could not order respondent to refrain from an act that has already occurred. Billings Assoc. Plumbers, 184 Mont. at 254, 602 P.2d at 600. Therefore, no meaningful relief to appellant's applications for preliminary injunction or writ of prohibition could be granted at the time of the show cause hearing.

A writ of mandate is the "counterpart" to the writ of prohibition. Section 27-27-101, MCA. See generally § 27-26-101, MCA. Since the purpose of a writ of prohibition is to <u>refrain</u> activity, the purpose of a writ of mandate is to <u>compel</u> activity. Section 27-26-102, MCA. More specifically, a writ of mandate "compel[s] the performance of an act which the law specially enjoins as a duty . . . or . . . compel[s] the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded . . ." Section 27-26-102, MCA.

Appellant requested the District Court to compel the respondent to seek approval of the purchase of the Boehm-Sheehy land from the voters of School District No. 4 through an election. Since the land had already been purchased, the District Court

properly concluded, when it dismissed the applications, that approval of the purchase by the voters would be meaningless.

The third issue on appeal is whether the District Court erred in denying appellant's applications for preliminary injunction, writ of prohibition, and writ of mandate which requested that respondent be enjoined from spending the fire insurance monies on the development of the purchased land without first getting approval from the voters.

Appellant's applications and complaint for relief focus upon the argument that, based upon §§ 20-6-603, -621, MCA and § 20-9-508, MCA, respondent lacked the authority to construct a new middle school without first getting approval from the voters. We find that substantial, credible evidence exists to support the District Court's conclusion that respondent has the authority to proceed with construction.

Section 20-6-603, MCA, grants school board trustees the authority to "acquire or dispose of [school] sites and buildings." Generally, such action cannot be taken by the trustees "without the approval of the qualified electors of the district . . ." Section 20-6-603, MCA. Exceptions exist to the this approval requirement. See § 20-6-603, MCA.

The relevant exception to the approval requirement states that if "the cost of constructing, purchasing, or acquiring the site or building is financed without exceeding the maximum-general-fund-budget-without-a-vote amount . . . " an election is not required. Section 20-6-603 (1)(c), MCA. The District Court correctly found that the construction of the middle school could be financed without exceeding the maximum-general-fund-budget-without-a-vote amount. These monies would come from the insurance proceeds acquired after the old middle school at 5th and Callender burned down.

Insurance proceeds can be used to credit the building fund of a school district. Section 20-9-508(1)(d), MCA. Section 20-9-508(1)(d), MCA, states:

> (1)   The trustees of any district shall establish or credit the building fund whenever such district:  . . . (d)   receives money as an insurance settlement for the destruction of any property or portion of property insured by the district. . .

Appellant argues that, even if there are sufficient insurance proceeds to finance construction, respondent is still required to hold a site approval election. We disagree. Section 20-6-621(1), MCA, generally requires that the "trustees of any district shall have the authority to select the sites for school buildings [and] such selection shall first be approved by the qualified electors of the district before any contract for the purchase of such site is entered into . . . ." Section 20-6-621, MCA, also contains an exception that is applicable to this case. This exception states that a site approval election is not required if the trustees "acquire property contiguous to an existing site that is in use for school purposes." Section 20-6-621(1), MCA.

Respondent argues that the Boehm-Sheehy land is contiguous to the McLeod Island site. We agree. Although the only Montana case dealing with this issue held that "where two tracts of land corner with each other . . . they are contiguous," if the land involved would touch but for a public road, such land is also contiguous. Oregon Mtg. Co., Ltd. v. Dunbar et al., 87 Mont. 603, 607, 289 P. 559, 560 (1930). Other states have held that a contiguous piece of land is one that either substantially touches the second piece of land or would substantially touch the second piece of land but for a public road. In the case of Town of Lyons v. City of Lake Geneva, 202 N.W.2d 228 (Wis. 1973), in holding that a gap of 23 feet caused by a public road was close enough to the city limits

9

to be contiguous, the Wisconsin court defined contiguous as "[i]n close proximity; near, though not in contact; neighboring. . ." Similarly, the Nebraska court has held that "two tracts separated only by a public highway are contiguous . . ."  In re Thomas' Estate, 134 N.W.2d 237 (Neb. 1965).



Defendant's Exhibit E

The Boehm-Sheehy land, designated by Defendant's Exhibit E as "Tract 1", is located directly across the county road from the

10

McLeod Island site, designated as the "High School Tract." But for this road, the Boehm-Sheehy land and the McLeod Island site would touch for a distance of more than eight hundred feet. Under these set of facts we hold that the land is contiguous within the meaning of § 20-6-621(1), MCA.

The acquired land must also be "contiguous to an existing site that is in use for school purposes." Section 20-6-621(1), MCA. The building in which both the Livingston High School and the Livingston Elementary School are presently operating is located on the McLeod Island site and is "an existing site that is in use for school purposes." Section 20-6-621(1), MCA.

Appellant argues that this exception only applies if the acquired land and the existing site are both owned by the same school district. Appellant argues that the existing site of McLeod Island is owned by High School District No. 1, therefore respondent should be unable to acquire the Boehm-Sheehy land without a site approval election. We disagree with appellant's statutory interpretation.

Section 20-6-621(1), MCA, simply recognizes that obtaining additional land immediately adjacent, or contiguous, to sites previously approved by district electors is not necessary. The intent of this statute is obviously to promote the building of schools within the same general area of a city thereby easing both transportation within the remainder of the city and school administrative procedures. Title 20, MCA, the school code of which § 20-6-621(1), MCA, is a part, gives great attention to distinguishing between elementary and high school districts. Therefore, if the legislature had intended that contiguous sites be contiguous to the same district's previously owned sites, it would have said so. Since the McLeod Island site was previously approved by the voters and the Boehm-Sheehy land is contiguous to

11

such site, it is unnecessary for the voters to subsequently approve an adjacent site.

Appellant's applications for preliminary injunction and writ of prohibition are premised upon a finding that respondent lacked authority to purchase the Boehm-Sheehy land and to construct a middle school thereon without direct approval from the electors. Based upon the above discussion, we conclude that respondent did have authority to purchase the land and does have authority to construct a middle school thereon. The District Court's dismissal of appellant's applications for preliminary injunction and writ of prohibition was proper.

Likewise, appellant's application for writ of mandate was premised upon a finding that the law imposes a duty upon respondent to submit the purchase of the Boehm-Sheehy land and the construction of the middle school to the voters for approval. Again, based upon the above discussion, we conclude that such a duty does not exist. Therefore, the District Court's dismissal of appellant's application for writ of mandate was proper.

The fourth issue raised by appellant is whether certain District Court's findings are clearly erroneous. The findings appellant protests are irrelevant to the ultimate decision of this Court and, therefore, will not be discussed.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

12

John Conway Harrison

_____

Justices