No. 95-491

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

WILL GOYEN and BONNIE GOYEN,

　　　　　Plaintiffs and Appellants,

　　v.

CITY OF TROY, MONTANA, a body politic
and corporate; the CITY COUNCIL thereof;
and ROD JOHNSON, Mayor; JIM HAMMONS,
LORETTA JONES, RON PIERCE, and LAURA
SCHRADER, in the official capacity as
City Council members,

　　　　　Defendants and Respondents.

FILED

APR 22 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:　District Court of the Nineteenth Judicial District,
　　　　　　　　In and for the County of Lincoln,
　　　　　　　　The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

　　　　For Appellants:

　　　　　　Michael H. Keedy, Atherton & Keedy,
　　　　　　Kalispell, Montana

　　　　For Respondents:

　　　　　　Thomas R. Bostock, Warden, Christiansen,
　　　　　　Johnson & Berg, Kalispell, Montana

Submitted on Briefs:　March 14, 1996

Decided:　April 22, 1996

Filed:

_____
　　　　Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

This is an appeal from an order of the Nineteenth **Judicial** District Court, Lincoln County, denying Will and Bonnie Goyens' petition and quashing their application for alternative writs of mandamus and prohibition. We affirm.

The dispositive issues are as follows:

1. Did the District Court err in concluding there was no violation of the open meeting law in regard to the May 10, 1995, meeting?

2. Did the District Court err in concluding there was no violation of the open meeting law in regard to the August 16, 1995, hearing?

3. Did the District Court err in quashing the writs of mandamus and prohibition?

FACTS

Will Goyen was the Chief of Police in Troy. At the May 10, 1995, city council meeting, a number of citizens showed up to question the mayor concerning Goyen's involvement in an incident locally known as "gravel-gate." The gravel-gate incident involved the removal of a significant quantity of gravel from a city gravel pile by both Goyen and another individual. Apparently Goyen had permission from a council member to use a city vehicle and remove the gravel. However, while Goyen was removing the gravel, another private citizen was also at the gravel pile and removed

approximately seventy yards of gravel without any authority to do so. Goyen took no action to stop or to report the violation.

The gravel-gate incident was not on the May 10 agenda and the mayor and city council were not aware that it would be raised prior to the meeting. Goyen was not present at the meeting. When the issue was raised at the meeting, the mayor stated that the matter was a personal problem and would not be handled at a public meeting. Following the meeting, the council went into executive session to discuss the allegations against Goyen. Goyen was not notified that the council would be closing the meeting to discuss matters that impacted on his individual privacy rights.

Before the council went into executive session, Crystal Denton, a local woman, asked the mayor that she be permitted to speak privately to the council. The mayor testified that he did not know what she wanted to talk about. Denton informed the council that she and Goyen had engaged in several voluntary acts of sexual intercourse in or near the city patrol car while Goyen was on duty and in uniform. The mayor and the council listened to these allegations and informed Denton that she needed to file a sworn statement before any action could be taken. Denton later filed a sworn statement and the mayor confronted Goyen with the allegations. Goyen denied the content of her allegations.

Members of the community raised a number of additional allegations in regard to Goyen and as a result the mayor suspended Goyen for five days. On August 1, 1995, a letter was prepared

3

recommending discharge and a pre-termination discharge hearing was scheduled for August 16, 1995.

The August 16 hearing was held in open session and Goyen and his attorney were given the right to cross-examine all witnesses. At Denton's request, the meeting was closed during her testimony although Goyen and his attorney were allowed to remain. During Denton's testimony, the council was informed that another witness, Sharon Anderson, needed to testify at that time due to her work schedule. Since the council did not have subpoena power, they interrupted Denton's testimony and allowed Anderson to testify. The mayor was aware that Anderson's testimony concerned the relationship between Denton and Goyen and therefore kept the meeting closed. Goyen did not object to this closure. Anderson testified as to her observations of physical contact between Denton and Goyen while Goyen was on duty and in uniform. Following Anderson's testimony, Denton continued with her testimony in closed session.

The hearing took a total of nine and one-half hours and the council conducted their deliberations in open session. The council voted unanimously to fire Goyen, finding that he had not been truthful in his response to the gravel issue and that a preponderance of the evidence indicated that he had sexual intercourse with Denton on at least two occasions while he was on duty, in uniform, and using the patrol car. The council also found that Goyen had wrongfully removed beer from the city police

evidence locker and that he had improperly handled a traffic arrest by permitting an obviously intoxicated minor to drive an uninsured vehicle which resulted in damage to the vehicle.

Following his discharge, Goyen and his wife filed a petition to void the city council's decision pursuant to the open meeting law and also filed writs of mandamus and prohibition. These claims were combined in a single action. The court initially issued the alternative writs but following a hearing on a motion to quash, subsequently quashed the writs and dismissed the petition. From the court's denial of the Goyens' petition and writs, they appeal.

ISSUE 1

Did the District Court err in concluding there was no violation of the open meeting law in regard to the May 10, 1995, meeting?

Section **2-3-203**, MCA, provides that all meetings of governmental bodies be open with the following exception:

> [T]he presiding officer of any meeting **may close** the meeting during the **time** the discussion relates to a matter of individual privacy and then if and only if the presiding officer determines that the demands of individual privacy clearly exceed the merits of public disclosure. The right of individual privacy may be waived by the individual about whom the discussion pertains and, in that event, the meeting must be open.

Section 2-3-203(3), MCA.

In its conclusions of law, the District Court determined that

> The closure of the May 10 meeting to the public by the Mayor was made for the individual privacy of Will Goyen, and the Mayor had made a determination that the demands of individual privacy clearly exceeded the **merits** of public disclosure; the continued closure while Crystal

5

> Denton addressed the council still involved the individual privacy of Will Goyen, and it also included Denton's right to privacy, apart from the fact that there was no one else there anyhow; and, nothing was done by the council, so there is nothing to void.

While the District Court's conclusion upheld a discretionary decision to close the meeting on May 10, our review is based upon the District Court's interpretation of § 2-3-203, MCA, and so we will review the court's conclusion for correctness of law. See Day v. Child Support Enforcement Div. (1995), 272 Mont. 170, 175, 900 P.2d 296, 299.

Goyen asserts he did not attend the May 10 meeting because he had no notice that he was going to be discussed. Without notice, Goyen argues he was in no position to either assert or waive his right of individual privacy. Therefore, he claims any discussion pertaining to him should have transpired in open session pursuant to § 2-3-203, MCA, so that the public could adequately evaluate whether the resulting action by the council--Goyen's discharge--was fair and appropriate. Goyen contends his discharge should be void as a result of the council's violation in closing the May 10 meeting.

As noted, § 2-3-203, MCA, allows an individual about whom the discussion pertains to waive his or her right of individual privacy. That right is ineffectual where the individual had no notice of the closure. A right granted is presumed to include whatever rights are essential to its use. Section 1-3-213, MCA. Therefore, the statutory right to waive individual privacy implies

6

that notice must be given to the individual discussed so that he or she has the opportunity to waive this right.

In the present case, the council discussed the allegations against Goyen concerning gravel-gate in executive session because the mayor, as the presiding officer, determined the demands of Goyen's privacy interests clearly exceeded the merits of public disclosure. Once the demands of individual privacy were found to predominate, the council was obligated to notify Goyen so that he could exercise his right to waive that interest. Goyen was not notified. As a result, the council's discussion of Goyen's privacy interest in executive session violated § 2-3-203, MCA, of the open meeting statutes.

It must be noted, however, that once the mayor determined that Goyen's privacy interest outweighed the public's right to know, the council could not discuss the matter in open session without subjecting themselves to a potential action for invasion of Goyen's privacy. In these situations, public bodies subject to the open meeting law should simply defer any discussion of the issue until the individual whose privacy interest is involved is notified and is given the opportunity to attend the meeting and/or waive his or her right of privacy and have the meeting conducted in open session. Thus, without notice to Goyen the discussion of the gravel-gate incident during an open meeting on that date would have been inappropriate as well.

As for the May 10 Denton allegations, Goyen's privacy interest was again the topic of discussion. Consequently, Goyen had a right to be notified of that discussion, regardless of whether Denton's assertion of her own privacy interest was reason enough to close the meeting. While the council asserts they took no action in executive session other than to recommend to Denton that she provide them with a sworn statement, the meeting was still subject to the open meeting laws set forth in §§ 2-3-201 through -221, MCA. In State v. Conrad (1982), 197 Mont. 406, 643 P.2d 239, we reviewed the legislative history of the open meeting law and said, "while the original section [now § 2-3-203, MCA] required that meetings at which action was taken be open, the section as amended required that all public meetings be open, whether action was taken or not." Conrad, 643 P.2d at 242. Accordingly, the May 10 meeting was subject to the requirements for open meetings regardless of whether any action was taken.

Nevertheless, no adverse action was taken against Goyen at the May 10 meeting and the subsequent hearing on August 16 provided Goyen with notice and the opportunity to confront those testifying against him and to observe, in open session, the council's deliberations before any action was taken. We have held that a meeting in violation of § 2-3-203, MCA, will not result in the voidance of a final decision where that final decision was not based upon actions taken at the illegal meeting. Common Cause v. Statutory Committee (1994), 263 Mont. 324, 333-34, 868 P.2d 604,

8

609 (comparing a governor's appointment which considered but was not bound by a list of candidates developed at a meeting held in violation of § 2-3-203, MCA, with the Board of Trustees v. Board of County Commissioners (1980), 186 Mont. 148, 606 P.2d 1069, where the Court voided a decision based solely upon a meeting held in violation of § 2-3-203, MCA.) The council took no action at the May 10 meeting and the decision to discharge Goyen was based upon testimony and evidence presented at the August 16 hearing. Under this factual situation the illegal May 10 meeting did not taint the August 16 hearing and the council's ultimate decision cannot be voided for the earlier violations.

While the District Court erred in concluding that the May 10 meeting did not violate the open meeting law, we have determined this error is harmless given the subsequent events of August 16. We have stated that "a district court's decision will not be reversed or remanded when the eventual result of the case would be the same without the error." In re S.C. (1994), 264 Mont. 24, 30, 869 P.2d 266, 269. We therefore conclude the District Court did not commit reversible error when it determined there was no violation of the open meeting law in regard to the May 10 meeting.

ISSUE 2

Did the District Court err in concluding there was no violation of the open meeting law in regard to the August 16, 1995, hearing?

9

Goyen was provided notice of the August 16 meeting and he waived his privacy interest in favor of an open meeting. Denton, however, requested closure of the meeting during her testimony. Anderson's testimony pertained to Denton and the council continued its closed meeting throughout her testimony as well.

In its conclusions of law, the District Court determined the council did not violate § 2-3-203, MCA, due to the fact that

> [t]here was a specific request by Denton for a closed meeting on August 16, 1995, and again, the demand for individual privacy of Denton clearly exceeded the merits of public disclosure; the request of Anderson to be heard out of order was unexpected, but the nature of her testimony was known to the Mayor, and it involved matters personal to Will Goyen and Crystal Denton; notwithstanding Goyen had waived his right to privacy, Denton had expressly demanded hers.

We will review the District Court's conclusion of law for its correctness. See Day, 900 P.2d at 299.

Goyen contends Denton's privacy interest was not at issue, and therefore, the District Court erred in concluding that the council did not violate § 2-3-203, MCA, when it closed the meeting to the public given that Goyen had waived his privacy interest.

Section 2-3-203(3), MCA, provides that " [t]he right of individual privacy may be waived by the individual about whom the discussion pertains and, in that event, the meeting must be open." In interpreting statutes, our role is to ascertain what is contained in the statute, not to insert what has been omitted nor to omit what has been inserted. Section 1-2-101, MCA; see Lovell v. State Comp. Mut Ins. Fund (1993), 260 Mont. 279, 285, 860 P.2d

10

95, 99. "[I]t is fundamental that words and phrases are to be given their plain, ordinary and usual meaning" when construing statutes. Common Cause, 868 P.2d at 608. The plain meaning of § 2-3-203(3), MCA, does not limit its exception to the individual who is the subject of the proceeding.

Furthermore, we have held that an accuser and witnesses to an alleged incident have a subjective privacy interest which society is willing to recognize as reasonable in an investigation focused on the accused. See Bozeman Daily Chronicle v. Police Dept. (1993), 260 Mont. 218, 230, 859 P.2d 435, 441. The exception applies to the "individual" about whom the discussion pertains. Denton's and Anderson's testimony pertained to the conduct of both Denton and Goyen. Denton, as an individual about whom the discussion pertained, could therefore assert her privacy interest in closed session where that interest was determined to exceed the merits of public disclosure.

Given that conclusion, Goyen contends the demands of Denton's privacy interest did not exceed the merits of public disclosure. Pursuant to our state constitution, the public has the right "to observe the deliberations of all public bodies . . except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." Mont. Const. art. II, § 9. The District Court determined that Denton's privacy interest did in fact clearly exceed the merits of public disclosure, and we will

11

review the court's determination for an abuse of discretion. <u>See</u> State v. Burns (1992), 253 Mont. 37, 40-41, 830 P.2d 1318, 1321.

In Hastetter v. Behan (1982), 196 Mont. 280, 639 P.2d 510, we set forth a two-prong test whereby a court may decide whether a privacy interest is protected under the state constitution. First, we must determine whether the person involved had a subjective or actual expectation of privacy; and second, we must determine whether society is willing to recognize that expectation as reasonable. <u>Hastetter,</u> 639 P.2d at 512-13 (citing Smith v. Maryland (1979), 442 U.S. 735, 99 S. Ct. 2577, 61 L. Ed. 2d 220). We have relied upon this test in subsequent cases. Flesh v. Board of Trustees (1990), 241 Mont. 158, 165, 786 P.2d 4, 8; Great Falls Tribune v. Dist. Court (1989), 238 Mont. 310, 318, 777 P.2d 345, 350; Missoulian v. Board of Regents of Higher Education (1984), 207 Mont. 513, 522, 675 P.2d 962, 967; Montana Human Rights Div. v. City of Billings (1982), 199 Mont. 434, 442, 649 P.2d 1283, 1287.

Goyen contends Denton had no expectation of privacy given the fact that her charges against Goyen were common knowledge in the local community. We have nonetheless recognized that even "harmless or generally known information" is subject to constitutional protection. <u>Missoulian,</u> 675 P.2d at 969. Denton requested that her testimony be presented in private due to the fact she was married, had two small children, and lived in the community. Her relationship with Goyen, while allegedly known by others, was certainly private in nature.

12

In <u>Missoulian,</u> we stated that the "'right of privacy turns on the reasonableness of the expectation, which may vary, even regarding the same information and the same recipient of that information.'" <u>Missoulian,</u> 675 P.2d at 968 (quoting <u>Montana Human Rights,</u> 649 P.2d at 1288). Considering the subject matter of Denton's and Anderson's testimony and the surrounding circumstances, we determine that Denton had a reasonable subjective expectation of privacy and one which society is willing to recognize. Having met both prongs of the test in <u>Hastetter,</u> we conclude that the District Court did not abuse its discretion in its determination that Denton's privacy interest exceeded the merits of public disclosure.

ISSUE 3

Did the District Court err in quashing the writs of mandamus and prohibition?

The Goyens filed alternative writs of mandamus and prohibition in addition to their petition to void the council's decision. The District Court concluded that mandamus will not lie to control the discretion of a municipal body or officer, and that prohibition will not lie where the defendants were not exercising judicial functions. The court denied both writs in accordance with its conclusions.

We will review a district court's grant or denial of writs of mandamus and of prohibition for correctness of law. <u>See</u> Becky v. Butte-Silver Bow School Dist No. 1 (Mont. 1995), 906 P.2d 193, 195,

13

52 St. Rep. 1154, 1155 (reviewing writs of mandamus); and Awareness Group v. Board of Trustees (1990), 243 Mont. 469, 475, 795 P.2d 447, 451 (comparing writs of mandamus and prohibition). Generally, the purpose of a writ of mandamus is to compel activity, while the purpose of a writ of prohibition is to refrain from performing certain activities. Awareness Group, 795 P.2d at 451.

The Goyens rely upon Board of Trustees v. Board of County Commissioners (1980), 186 Mont. 148, 606 P.2d 1069, where we held that a writ of mandamus was appropriate to void a meeting that was in violation of our open meeting statutes. Bd. of Trustees, 606 P.2d at 1074-75. In that case, the Court was concerned about the unreasonable delay of the case and concluded that "[w]hile the use of a writ of mandamus is not textbook law, it is appropriate here." Bd. of Trustees, 606 P.2d at 1075. The Court then stated "[i]n the future, however, it would seem the suit should take the form of a simple petition to void an action or a petition for a declaratory judgment." Bd. of Trustees, 606 P.2d at 1075. We take this opportunity to reiterate that actions for violations of the open meeting law are appropriately brought by a petition alleging violation of the act pursuant to § 2-3-203, MCA. Writs of mandamus and prohibition are not appropriate for the enforcement of those provisions.

There was no unreasonable delay in the present case and the Goyens did in fact appropriately petition the court under § Z-3-203, MCA, to void the council's actions. We conclude the

14

writs are therefore not appropriate as a matter of law and the District Court did not err in denying them, regardless of its reasons.   <u>See</u> Kephart v. Portmann (1993), 259 Mont. 232, 236, 855 P.2d 120, 122-23.

Affirmed.

_____
Justice

We concur:

_____

_____

_____
Justices

15

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the majority's conclusion that the District Court did not commit reversible error when it determined that there was no violation of the open meeting law on May 10, 1995. I also concur that the District Court did not abuse its discretion when it denied the Goyens' petitions for writ of mandamus or writ of prohibition.

I dissent from that part of the majority opinion which concludes there was no violation of the open meeting law on August 16, 1995, because of Crystal Denton's privacy interest. I would conclude that someone who engages in voluntary acts of sexual intercourse in a police car with a police officer who is on duty, and then after the fact goes to a city council meeting to complain about the experience, has no reasonable expectation of privacy which society should be prepared to recognize, and therefore, that the second prong of the *Hastetter* test cannot be satisfied. Since there was no other basis for closing the city council's meeting to the public, the city council violated the open meeting law when it did so.

_____
Justice

April 22, 1996

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael H. Keedy
Atherton & Keedy
735 Main Street
Kalispell, MT 59901

Thomas R. Bostock
Warden, Christiansen, Johnson & Berg
P.O. Box 3038
Kalispell, MT 59903-3038

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _N. Gallagher_
Deputy