No. 97-497

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 47N

WILLIAM RICHARD BROWN,

Petitioner and Appellant,

vs.

STATE OF MONTANA,

Respondent and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Robert W. Holmstrom, Judge presiding.

No

COUNSEL OF RECORD:

For Appellant:

Laura Lee Anderson, Billings, Montana; Joyce Ann Dunning, Billings, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Micheal Wellenstein, Assistant Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone County Attorney, Richard Helm, Deputy Yellowstone County Attorney

Submitted on Briefs: July 23, 1998

Decided: March 16, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. William Richard Brown (Brown) appeals from the Findings of Fact, Conclusions of Law and Order of the Thirteenth Judicial District Court, Yellowstone County, dismissing his petition to reinstate his driving privileges which were suspended pursuant to § 61-8-402, MCA, because Brown refused to take an alcohol breath test. We affirm.**

**¶3. Brown raises two issues on appeal, which we restate as follows:**

**¶4. 1. Did the District Court err in finding that Brown indicated his refusal to take a breath test by shaking his head in a negative manner?**

**¶5. 2. Did the District Court err in ruling that Brown made an informed refusal to submit to a breath test?**

### Factual and Procedural Background

**¶6. On October 13, 1996, at approximately 12:41 a.m., Montana Highway Patrol Officer Steven Corson (Corson) was patrolling eastbound on Highway 312 near Huntley, Montana. Corson testified at the hearing on this matter that he saw Brown driving in the westbound lane and that Brown appeared to be traveling faster than the 55 miles-per-hour speed limit. Corson testified that he turned on his radar unit and clocked Brown at 72 miles per hour. As a result, Corson activated his top lights**

and pursued Brown. Corson stated that Brown drove approximately one-half mile before he pulled over and came to a stop.

¶7. Corson stated that he walked to the driver's window and asked Brown for his driver's license, registration, and proof of insurance card. Corson testified that Brown smelled of alcohol and appeared to be intoxicated. Corson also noticed that Brown's speech was slurred. Consequently, Corson asked Brown to get out of his car and walk to Corson's patrol car. Corson stated that Brown was "unsteady on his feet" as he walked to the patrol car.

¶8. After Brown sat down inside the patrol car, Corson testified that he administered the horizontal gaze nystagmus test (HGN test). Corson testified that Brown failed the HGN test. Corson testified that he also asked Brown to recite the alphabet. Corson stated that Brown's speech was slurred as he recited the letters and that Brown could not recite the entire alphabet. Because Corson believed that Brown was drunk, Corson arrested Brown and transported him to the Yellowstone County Detention Facility (YCDF).

¶9. Corson then accompanied Brown to the YCDF's DUI processing area. Corson testified that they arrived at the DUI processing area but that, despite Corson's requests, Brown refused to enter the Montana Highway Patrol's DUI processing room to be filmed.

¶10. Corson testified that he did not want a confrontation with Brown and therefore decided against forcing Brown into the processing room. Instead, Corson decided to start the DUI process as if Brown had entered the room. Corson started the video camera in the processing room and taped himself reading an advisory form which explained that Brown was arrested for driving under the influence of alcohol and the consequences of refusing to take a breath test. Corson testified that when he read the advisory form he was able to see Brown, that Brown was in his direct line of sight, and that Brown was looking at him. The tape shows that Corson asked Brown to take a breath test. The tape, however, shows that Brown did not give an oral response to Corson's question. Corson testified that Brown indicated his refusal to take a breath test by shaking his head in a negative manner.

¶11. Brown, however, related a substantially different version of the events at the hearing on this matter. Brown testified that he had gone to a street dance in Worden

and drank two beers. Brown stated that he left the street dance around 12:30 a.m. and headed home. Brown testified that he set his cruise control at 55 miles per hour. Brown recounted that Corson pulled him over and that Corson asked him to sit in the patrol car's passenger seat. Brown stated that Corson asked him to recite the alphabet and explained that he had trouble finishing the alphabet because he was scared and nervous. Brown denied that Corson administered a HGN test.

¶12. Brown admitted that he did not enter the Montana Highway Patrol's DUI processing room. On cross-examination, Brown explained that he did not enter the processing room because he did not "understand what we were going to do in there" and stated that he did not think that he was required to enter the room. Brown stated that he asked Corson why Corson wanted him in the processing room. Brown recalled that Corson answered, "that's where we prove you're guilty." Brown stated that he shook his head to indicate that he was not going to enter the processing room. Brown stated that Corson then walked into the processing room, remained in the processing room for a few minutes, returned and asked him again to enter the processing room. Brown testified that he shook his head to indicate that he was not going to enter the processing room. Brown stated that Corson went back into the processing room. At that point, Brown stated that another officer took his fingerprints and picture and placed him in a holding cell.

¶13. Brown testified that, from his location outside the processing room, he could only see part of the video camera, the doorway, and one of the processing room's walls. Brown maintained that he could not see Corson when Corson was inside the processing room; he stated that he could only see Corson when Corson was touching the video camera or when Corson was in the processing room's doorway. Brown also stated that he could not hear Corson talking when Corson was in the processing room. Brown testified that he did not hear Corson ask him to take a breath test nor inform him that he could lose his driver's license for refusing to take a breath test.

¶14. The State subsequently suspended Brown's driver's license pursuant to § 61-8-402(4), MCA, for refusing to take a requested breath test. On November 6, 1996, Brown filed a petition to reinstate his driver's license. The District Court held a hearing on Brown's petition on May 16, 1997. On July 2, 1997, the District Court issued its Findings of Fact, Conclusions of Law and Order dismissing Brown's petition to reinstate his driver's license and lifting the stay on the suspension of his license. Brown appeals from this Order.

## Standard of Review

¶15. **This Court reviews a district court's denial of a petition for reinstatement of a driver's license to determine whether the court's conclusions of law are correct and whether the court's findings of fact are clearly erroneous.** *Bush v. Montana Dept. of Justice*, **1998 MT 270, ¶ 7, 968 P.2d 716, ¶ 7, 55 St.Rep. 1118, ¶ 7 (citing** *Hulse v. State, Dep't of Justice*, **1998 MT 108, ¶ 14, 961 P.2d 75, ¶ 14, 55 St.Rep. 415, ¶ 14). A district court's finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is convinced that the district court made a mistake.** *Bush*, **¶ 7 (citing** *Interstate Prod. Credit Ass'n v. DeSaye* **(1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).**

## Issue 1.

¶16. *Did the District Court err in finding that Brown indicated his refusal to take a breath test by shaking his head in a negative manner?*

¶17. **Brown argues that the District Court's finding of fact regarding his refusal to take a breath test is clearly erroneous because the court's finding is directly refuted by Corson's testimony and by the video tape. The finding which Brown challenges states in pertinent part:**

Officer Corson activated the video camera, stood in the doorway, maintained eye contact with Brown who was approximately 8 feet away, read the implied consent law and asked Brown if he would blow into the Intoxilyzer 500 and Brown indicated his unwillingness by shaking his head no; at the [sic] point Officer Corson concluded the interview.

¶18. **Brown asserts that the court's finding that Brown indicated his unwillingness to take the breath test by shaking his head is clearly erroneous because Corson testified that it did not appear to him that Brown was paying attention to him when he asked Brown to take a breath test. Brown also contends that Corson's facial expression and responses on the video tape show that Brown did not indicate his refusal to take the breath test by shaking his head after Corson asked him to take a breath test. Thus, Brown contends that there is not substantial evidence to support the District Court's finding and, that, even if substantial evidence supports the court's finding, the record shows that the District Court made a mistake.**

¶19. When we review the record of a district court to determine whether its findings are supported by substantial evidence, our review is limited to whether there is evidence to support the court's decision; we do not retry the case to determine whether evidence was presented which supports contrary findings. *DNRC v. Montana Power Co*. (1997), 284 Mont. 59, 63, 943 P.2d 1251, 1254 (citation omitted). Since district courts are in a better position than this Court to observe witnesses and judge their credibility, we will not second guess a district court's determination regarding the strength and weight of conflicting testimony. *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 210, 930 P.2d 37, 45-46 (citing *Double AA Corp. v. Newland & Co.* (1995), 273 Mont. 486, 494, 905 P.2d 138, 142).

¶20. In the instant case, the evidence is conflicting as to whether Corson was able to see Brown when he read the advisory form, whether Brown was in Corson's direct line of sight, whether Brown was looking at Corson, and whether Brown indicated his refusal to take a breath test by shaking his head in a negative manner. The District Court, which observed Corson and Brown testify, and observed the video tape, stated in its Memorandum which accompanied its Findings of Fact, Conclusions of Law and Order that it resolved the conflicts in the evidence and found that Brown indicated his refusal to take a breath test by shaking his head. Thus, even though the evidence is conflicting, the record shows that Corson testified that Brown was in Corson's direct line of sight and that Corson asked Brown to take a breath test and that Brown shook his head in a negative manner to indicate his refusal to take the test. Thus, substantial evidence supports the District Court's finding that Brown refused to take a breath test. Moreover, having reviewed the record, including the video tape, we are not convinced that the District Court made a mistake. Therefore, we hold that the District Court's finding that Brown indicated his unwillingness to take the breath test by shaking his head is not clearly erroneous.

¶21. Brown also asserts that the court's finding is clearly erroneous because the evidence shows that Corson was not standing in the doorway to the processing room approximately eight feet from Brown when Corson read the advisory form. Rather, Brown asserts that the evidence shows that Corson stood in the middle of the processing room approximately 15 or 16 feet away from Brown when he read the advisory form. We, however, agree with the State that the seven or eight foot difference and Corson's exact location are inconsequential and do not address the District Court's ultimate finding that Corson read Brown the advisory form and that Brown indicated that he refused to take the breath test by shaking his head. We have

stated that "a district court's decision will not be reversed or remanded when the eventual result of the case would be the same without the error." *Goyen v. City of Troy* (1996), 276 Mont. 213, 220, 915 P.2d 824, 829 (quoting *In re S.C.* (1994), 264 Mont. 24, 30, 869 P.2d 266, 269). Since the record shows substantial evidence to support the District Court's findings that Corson maintained eye contact with Brown, read Brown the advisory form, asked Brown to take a breath test, and that Brown indicated that he would not take a breath test by shaking his head, the court's findings as to the distance between Brown and Corson and Corson's exact location are insignificant to the District Court's ultimate finding. Therefore, even though the evidence in the record shows that the District Court's finding that Corson was standing in the doorway to the processing room approximately eight feet away from Brown is clearly erroneous, the court's mistake is inconsequential and therefore not reversible error.

¶22. In sum, having thoroughly reviewed the record, we conclude that substantial evidence supports the District Court's finding that Brown refused to take the breath test as required by § 61-8-402, MCA, after Corson read him the advisory form and asked him to take a breath test. We also conclude that, although there is no evidence in the record to support the court's finding that Corson was standing eight feet away from Brown, the court's mistake is not reversible error because it is inconsequential to the court's ultimate finding that Brown refused to take a breath test after Corson read him the advisory form and asked him to take a breath test. Accordingly, we affirm the District Court's finding.

## Issue 2.

¶23. *Did the District Court err in ruling that Brown made an informed refusal to submit to an alcohol breath test?*

¶24. Brown asserts that Corson did not sufficiently advise him of his opportunity to take a breath test nor of the consequences for refusing to take a breath test, as a matter of law, and thus that the District Court erred in concluding that Brown made an informed refusal to take a breath test. In support of his argument, Brown cites several of our decisions for the proposition that law enforcement officers have a legal duty to ensure that a DUI suspect is adequately informed of the requirement to take a test for alcohol and of the consequences for refusing to take such a test. Brown then

asserts that he could not hear Corson read the advisory form and therefore that, as a matter of law, he did not make an informed decision refusing a breath test.

¶25. However, as we previously noted, the evidence in the instant case is conflicting as to whether Brown heard Corson read the advisory form. The District Court weighed the strength and weight of the conflicting testimony and found that Brown heard Corson read the advisory form and that Brown "purposefully and knowingly refused the breathalyzer test." We will not second guess the District Court's determination that Corson's testimony was more credible than Brown's. Thus, since the advisory form clearly stated that Brown's license would be seized and suspended for six months if he refused to take the requested breath test, we conclude that Corson adequately informed Brown of the requirement to take a breath test and of the consequences of refusing to take a breath test and, therefore, that Brown made an informed decision, as a matter of law, when he refused to take a breath test.

¶26. Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART