Nos. 97-310 and 97-311

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 266

PATRICIA M. CARR,

Plaintiff and Respondent,

v.

IAN M. BETT,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James D. McKenna (argued); Walsh & McKenna, P.C.;

Bozeman, Montana

For Respondent:

William Francis Koeppen (argued); Attorney at Law;

Gallatin Gateway, Montana

For Amicus Curiae:

Hon. Joseph P. Mazurek, Attorney General; Chris Tweeten (argued),

Assistant Attorney General; Helena, Montana

Heard: March 19, 1998

Submitted: April 14, 1998

Decided: November 5, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. On March 17, 1995, Ian M. Bett filed a petition for dissolution of marriage in the Eighteenth Judicial District Court, Gallatin County. On June 28, 1996, Ian's wife, Patricia M. Carr, filed a divorce complaint in a Wyoming district court. On October 30, 1996, the Wyoming court issued a decree of divorce and judgment to Patricia by default. On January 21, 1997, Patricia filed the Wyoming judgment with the Gallatin County District Court. She then moved for summary judgment in Ian's Montana dissolution proceeding. Subsequently, Ian moved to set aside the Wyoming judgment filed by Patricia in the Gallatin County District Court. On April 11, 1997, the District**

Court issued two orders, one granting Patricia's motion for summary judgment in the dissolution proceeding, and another denying Ian's motion to set aside the Wyoming judgment. Ian now appeals from both the order granting Patricia summary judgment in the dissolution proceeding and the order denying his motion to set aside the Wyoming judgment in the case where the Wyoming judgment was transcribed. We affirm.

¶2. We address the following issues on appeal:

¶3. 1. Did Ian Bett file his notices of appeal in a timely manner?

¶4. 2. Did Ian Bett file the proper motion under the Montana Rules of Civil Procedure to set aside the foreign judgment filed in the District Court?

¶5. 3. Did the District Court err when it denied Ian Bett's motion to set aside the Wyoming judgment filed in the Eighteenth Judicial District Court, Gallatin County?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6. Patricia M. Carr and Ian M. Bett were married in Driggs, Idaho, on November 18, 1991. They lived a rather bohemian lifestyle, traveling throughout the West in a camper while Ian worked as a sales representative for a company. They also lived apart at times. Sometime in 1993, they separated but maintained contact. In August, 1993, Patricia moved to Jackson, Wyoming and Ian moved to Bozeman, Montana.

¶7. On March 17, 1995, Ian filed a petition for dissolution of marriage in the Eighteenth Judicial District Court, Gallatin County (Cause No. 95-120, Gallatin). More then a year later, on July 9, 1996, Patricia was served in Jackson, Wyoming, with a summons and petition of Ian's cause of action filed in Montana. She filed an answer to this petition on August 2, 1996.

¶8. On June 28, 1996, before being served with process of Ian's Montana action, Patricia filed a complaint seeking a decree of divorce in the District Court of Teton County, Ninth Judicial District, in Jackson, Wyoming. Ian was served in Bozeman, Montana, with a copy of the summons and complaint of the Wyoming action on August 21, 1996. Ian did not respond to the summons and complaint, and on October 30, 1996, a decree of divorce and judgment against Ian and in favor of Patricia was

entered in the Wyoming action. The Wyoming divorce decree dissolved Ian and Patricia's marriage in Wyoming and awarded Patricia $95,000 as her share of the marital assets.

¶9. On January 21, 1997, Patricia filed an authenticated copy of the Wyoming decree and judgment with the Gallatin County Clerk of Court pursuant to the Uniform Enforcement of Foreign Judgments Act, §§ 25-9-501 through -508, MCA, (Cause No. 97-22, Gallatin). On January 22, 1997, Patricia filed a motion for summary judgment seeking to dismiss Ian's petition for dissolution of marriage. On February 10, 1997, Ian filed a motion to set aside the Wyoming judgment. This motion, however, was not filed in the case where the Wyoming judgment was transcribed (Cause No. 97-22, Gallatin), but in the case where he filed his petition for dissolution (Cause No. 95-120, Gallatin).

¶10. The District Court heard oral argument on Patricia's motion for summary judgment on February 27, 1997. During the oral argument, Patricia questioned whether Ian properly filed his motion to set aside the Wyoming decree and judgment in the same cause of action as his petition for dissolution of marriage. Thereafter, on February 28, 1997, Ian filed a motion to set aside the Wyoming decree and judgment in the cause of action wherein it had been transcribed in Montana by Patricia (Cause No. 97-22, Gallatin).

¶11. On April 11, 1997, the District Court ruled in favor of Patricia's motion for summary judgment in Ian's Montana action, resulting in its dismissal. On the same day, the court entered an order denying Ian's motion to have the Wyoming judgment set aside. In both cases, notice of entry of judgment was filed on April 15, 1997. On April 29, 1997, Ian filed motions to alter or amend judgment pursuant to Rule 59(g), M.R.Civ.P., in each case. Both motions were denied by the District Court on May 19, 1997.

¶12. On May 30, 1997, Ian filed notices of appeal. In Case No. 97-311 (Cause No. 95-120, Gallatin), Ian appeals the order of the District Court granting Patricia's motion for summary judgment and dismissing Ian's petition for dissolution of marriage. In Case No. 97-310 (Cause No. 97-22, Gallatin), Ian appeals the order of the District Court denying his motion to set aside the Wyoming decree and judgment.

¶13. On June 11, 1997, Patricia filed motions with this Court to dismiss both appeals,

Case Nos. 97-310 and 97-311. On June 25, 1997, Ian filed a motion to consolidate Case Nos. 97-310 and 97-311. On July 2, 1997, we issued two separate orders. First, we granted Ian's motion to consolidate, and Case No. 97-310 was consolidated with Case No. 97-311 for purposes of this appeal. In the second July 2, 1997, order, we reserved ruling on Patricia's motions to dismiss and took her motions under advisement. We ordered both parties to include arguments and authority on their respective positions regarding Patricia's motions to dismiss the appeals in their briefs.

¶14. On November 6, 1997, after initial briefing of the appeal by the parties, this Court raised the issue of whether § 25-9-503, MCA, was constitutional in light of the Full Faith and Credit Clause, Article IV, Section 1, of the United States Constitution. We ordered supplemental briefing by both parties on this issue and stated that an oral argument would be scheduled at a later date. Also, because a decision in this case may implicate the constitutionality of § 25-9-503, MCA, we named the Montana Attorney General a party to this proceeding and invited the State to file a brief and present a separate oral argument.

¶15. On December 4, 1997, Ian moved this Court for a suspension of proceedings. In the Wyoming District Court, Ian had filed a motion to set aside the Wyoming judgment. On December 9, 1997, we granted the motion on the grounds that further proceedings regarding this case were being held in Wyoming.

¶16. On December 30, 1997, the District Court of Teton County, Ninth Judicial District, in Jackson, Wyoming, denied Ian's request to set aside the default judgment obtained by Patricia on October 30, 1996. Ian did not appeal this decision of the Wyoming court and the default judgment is now final.

ISSUE 1

¶17. Did Ian Bett file his notices of appeal in a timely manner?

¶18. At the time Ian filed his motions to alter or amend and his subsequent notices of appeal, Rule 5(a), M.R.App.P., provided in pertinent part:

(1) In civil cases the notice of appeal required by Rule 4 shall be filed with the clerk of the district court within 30 days from the date of the entry of the judgment or order appealed

from, except that in cases where service of notice of entry of judgment is required by Rule 77(d) of the Montana Rules of Civil Procedure the time shall be 30 days from the service of notice of entry of judgment . . . .

. . . .

(4) If a timely motion under the Montana Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion....

**¶19. In her motions to dismiss Ian's appeals, Patricia makes two different arguments. First, Patricia contends that both of Ian's motions to alter and amend judgment were, in substance, motions for reconsideration. If, as Patricia claims, Ian's motions are, in fact, motions for reconsideration, the motions would not toll the time for filing of an appeal under Rule 5(a)(4), M.R.App.P. Therefore, Patricia argues that Ian's notices of appeals were not timely filed since they were filed more than thirty days after the notice of entry of judgment.**

**¶20. Patricia relies on *Miller v. Herbert* (1995), 272 Mont. 132, 900 P.2d 273, to argue that Ian's motions to alter or amend judgment should be considered motions for reconsideration that do not extend the time allowed for filing an appeal. First, she contends that Ian offers no new facts, and no new evidence or new law in support of his motions. The arguments that Ian presents, Patricia claims, are the same arguments previously submitted to the District Court. Second, Patricia argues that Ian's motions are not Rule 59(g) motions because they ask the District Court to completely reverse its earlier orders rather than request the court to alter or amend its decision.**

**¶21. Ian counters that both his motions were legitimate Rule 59(g) motions to alter or amend judgment. Ian states that in both his motions and briefs, he pointed out to the District Court that it had completely ignored one of his main arguments. Ian claims that rather than asking the court to reconsider its decision, he was requesting that the court consider the merits of his argument regarding the propriety of the default judgment issued by the Wyoming court. Ian argues that his Rule 59(g) motions are**

not motions for reconsideration as defined in *Miller*. Finally, Ian states that in the context of altering or amending the District Court's decision, the only possible option available to the court was a complete reversal.

¶22. In *Miller*, this Court was faced with whether a motion that was entitled "motion for reconsideration" was, in fact, a Rule 59(g) motion to alter or amend judgment that tolled the time for the filing of a notice of appeal. We stated that "[w]e shall look to the substance of a motion, not just its title, to identify what motion has been presented." *Miller*, 272 Mont. at 136, 900 P.2d at 275. We held that a motion for reconsideration may be equated to a motion to alter or amend a judgment in limited circumstances where the motion "contain[s] statements or allegations demonstrating that such motion is the equivalent to a motion to amend or a motion to alter a judgment." *Miller*, 272 Mont. at 136, 900 P.2d at 275. This Court further elaborated on when a motion for reconsideration would be construed substantively as a motion to alter or amend pursuant to Rule 59(g) in *Nelson v. Driscoll* (1997), 285 Mont. 355, 948 P.2d 256.

¶23. Patricia's reliance on *Miller* to argue that this Court should look at the substance of Ian's motions to determine whether they properly are Rule 59(g) motions is misplaced. Neither *Miller* nor *Nelson* held that when a Rule 59(g) motion is titled "motion to alter or amend judgment," a court may look beyond the title of the motion to determine whether it is in substance a motion to alter or amend. In both *Miller* and *Nelson*, the pleadings had been incorrectly labeled motions for reconsideration and we held that they would be construed as motions to alter or amend judgment in order to save this Court's jurisdiction over the appeals. We have never denied jurisdiction in any case based on a post-trial motion that had been properly labeled but did not include substantive language in support of its label.

¶24. We reject Patricia's argument that this Court should look beyond the title of a Rule 59(g) motion and analyze the substance of the motion in order to determine whether the motion is, in fact, a proper Rule 59(g) motion. To do so would mean that a party who has filed a Rule 59(g) motion with a district court would never be confident that it fell within the framework of Rule 59. There would always be a looming possibility that the subsequent appeal could be dismissed by this Court when asked to examine the substance of the motion under our judicial microscope. We, therefore, hold that when a party has identified and titled a motion as one to alter or amend pursuant to Rule 59(g), this Court is not going to analyze the substance of the

motion to see if it comes under the definition of a motion to alter or amend.

¶25. As stated above, on April 11, 1997, the District Court entered one order granting Patricia's motion for summary judgment and another order denying Ian's motion to set aside the foreign judgment. In both cases, a notice of entry of judgment was filed on April 15, 1997. On April 29, 1997, Ian filed a Rule 59(g) motion in each case. Both were labeled "motion to alter or amend judgment." On May 19 1997, the District Court denied both motions to alter or amend judgment. On May 30, 1997, Ian filed his notices of appeal.

¶26. Under Rule 59(g), Ian was required to file his motions to alter or amend judgment within ten days after service of the notice of the entry of the judgment. We determine that Ian's motions to alter or amend judgment were timely filed. Under Rule 5(a)(4), M.R.App.P., Ian had thirty days after the denial of his motions to alter or amend judgment to file his notices of appeal. In this case, the court denied both motions on May 19, 1997, and Ian filed his notices of appeal on May 30, 1997. Thus, we conclude that Ian's notices of appeal were timely filed in both cases.

¶27. Furthermore, we conclude that Ian's Rule 59(g) motions were appropriate in seeking a complete reversal of the District Court's decisions. In this case, Ian asked the court to alter or amend the judgment by setting aside the Wyoming judgment. If the District Court granted Ian's request, the judgment would have been set aside and summary judgment would not have been granted in the dissolution proceeding. There were no other options available to the District Court to partially alter or amend the judgment pursuant to Rule 59(g) and the relief requested. Therefore, we determine that Ian's Rule 59(g) motions were appropriate in seeking a reversal of the court's earlier decisions.

ISSUE 2

¶28. Did Ian Bett file the proper motion under the Montana Rules of Civil Procedure to set aside the foreign judgment filed in the District Court?

¶29. Whereas above we addressed Patricia's argument about the substance of Ian's Rule 59(g) motions, we now discuss Patricia's argument regarding the timing of Ian's Rule 59(g) motion filed in Cause 97-22 (Case 97-310), the Wyoming judgment transcribed in Montana. Patricia again argues that Ian's motion to alter or amend

judgment was not timely and, therefore, the time for filing a notice of appeal was not extended. Patricia states that in order for Ian's Rule 59(g) motion to be considered timely filed, it must have been filed within ten days of any judgment, or notice of entry of judgment. However, it is unclear whether Patricia is arguing that the ten day period for filing a Rule 59(g) motion begins to run on October 30, 1996, the day judgment was entered by the Wyoming District Court, or on January 21, 1997, when the Wyoming judgment was transcribed in the Montana District Court.

¶30. In either case, Patricia asserts that Ian's Rule 59(g) motion is untimely because it is not related to the District Court's April 11, 1997, order denying his Rule 60(b) motion to set aside the Wyoming judgment. Rather, Patricia states that Ian's Rule 59(g) motion refers directly to the Wyoming judgment itself. Thus, Patricia argues that Ian's Rule 59(g) motion was untimely because it was not filed within ten days after the judgment was entered by the Wyoming District Court or when the Wyoming judgment was transcribed in the Montana District Court.

¶31. We determine that Patricia's argument does not clearly represent Ian's Rule 59(g) motion in Cause 97-22/Case 97-310 or the proceedings below in the District Court. Ian's motion to alter or amend judgment filed on April 29, 1997, clearly states that he seeks to alter or amend the order and memorandum issued by the District Court on April 11, 1997. He goes on to state that his reasons for his motion are the court failed to consider all the issues presented by the parties, and the court's memorandum and order are erroneous as a matter of law. Ian's motion was supported by a brief filed on May 6, 1997. Although, in essence, Ian is seeking to alter or amend the Wyoming judgment, we conclude that Ian's Rule 59(g) motion is related to the District Court's April 11, 1997, order and thus was timely made. Furthermore, Patricia's argument ignores the fact that a Rule 60(b) motion is the appropriate motion to file to seek review of a foreign judgment filed in a Montana district court.

¶32. Moreover, we conclude that a Rule 59(g) motion would not be the appropriate motion to make in challenging a foreign judgment filed in Montana. In Montana, Rule 59(g) motions are commonly made after the entry of a judgment by a Montana district court by either one or both of the parties that appeared before the court. On the other hand, Rule 60(b) sets forth numerous circumstances in which a district court may relieve a party from a final judgment, order, or proceeding. We agree with Ian and the practice in other states that a Rule 60(b) motion is the appropriate

motion to file in order to seek review of or relief from a foreign judgment. *See, e.g., Marworth, Inc. v. McGuire* (Colo. 1991), 810 P.2d 653; *Data Management Systems, Inc. v. EDP Corp.* (Utah 1985), 709 P.2d 377.

¶33. Therefore, we hold that Ian's Rule 60(b) motion and his Rule 59(g) motion, as they relate to the proceeding involving the Wyoming judgment filed in Montana, were both appropriate and timely filed. Under Rule 60(b)(1), M.R.Civ.P., a party that asserts excusable neglect as a reason for relief from a final judgment has sixty days after the judgment was entered to file a Rule 60(b) motion. As discussed above, Ian filed a Rule 60(b) motion to set aside the foreign judgment filed in Montana within sixty days after Patricia recorded the Wyoming judgment. After briefing by both parties and a hearing, the District Court ruled against him on April 11, 1997. Notice of entry of judgment was filed on April 15, 1997. Ian then filed a motion to alter or amend that judgment within the ten-day period prescribed by Rule 59(g). We conclude that this motion was related to the District Court's April 15, 1997, order. After the District Court denied the motion on May 19, 1997, Ian filed his notice of appeal on May 30, 1997, well within the thirty-day time period prescribed by Rule 5, M.R.App.P. Thus, we conclude that Ian's Rule 59(g) motion was timely filed.

ISSUE 3

¶34. Did the District Court err when it denied Ian's motion to set aside the Wyoming judgment filed in the Eighteenth Judicial District Court?

¶35. At first, we note that the District Court entered summary judgment against Ian as a matter of law. The District Court's decision was based on its conclusion that the Wyoming court had personal jurisdiction over Ian and on the court's related April 11, 1997, order denying Ian's motion to set aside the Wyoming judgment in Montana. On appeal, Ian challenges the District Court's failure to set aside the Wyoming judgment filed in Montana. Our standard of review relating to conclusions of law is whether the trial judge's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

¶36. Ian contends that Montana's version of the Uniform Enforcement of Foreign Judgments Act (UEFJA), §§ 25-9-501 through -508, MCA, and Rule 60(b), M.R.Civ.

P., permit a district court to set aside the default judgment obtained against him in Wyoming because of his inadvertence, mistake, or neglect there. Specifically, Ian argues that under § 25-9-503, MCA, anytime a foreign judgment is filed in a Montana district court, it is to be treated, in all respects, as a judgment of this state. Accordingly, he contends that once a foreign judgment is filed in Montana, it is subject to the same defenses or procedures, such as relief from a judgment under Rule 60(b), as any other Montana judgment. Therefore, because the Wyoming judgment against him was obtained by default and Montana law generally holds default in disfavor, Ian argues that the judgment should be set aside as invalid under Montana law.

¶37. Patricia counters that a Montana district court may not set aside a valid judgment of a sister state. Patricia contends that the Full Faith and Credit Clause of the United States Constitution does not permit a district court to set aside a valid foreign judgment under § 25-9-503, MCA, and Rule 60(b), M.R.Civ.P. Therefore, Patricia argues that the District Court did not err when it denied Ian's motion to set aside the Wyoming judgment.

¶38. The United States Constitution's Full Faith and Credit Clause provides, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1.

¶39. The U.S. Supreme Court has held that the full faith and credit obligation owed to final judgments is exacting. A final judgment rendered by a state court is entitled to full faith and credit in the courts of its sister states. *Underwriters National Assur. Co. v. North Carolina Life and Accident and Health Insurance Guaranty Ass'n* (1982), 455 U.S. 691, 102 S. Ct. 1357, 71 L. Ed. 2d 558. The U.S. Supreme Court has stated that full faith and credit "generally requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it." *Durfee v. Duke* (1963), 375 U.S. 106, 109, 84 S. Ct. 242, 244, 11 L. Ed. 2d 186-90. Moreover, "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Underwriters National Assur. Co.*, 455 U.S. at 704, 102 S. Ct. at 1365, 71 L. Ed. 2d at 570 (citations omitted).

¶40. Ian claims that Montana's UEFJA allows Montana district courts to reopen, vacate, or set aside foreign judgments under Rule 60(b), M.R.Civ.P. Section 25-9-503, MCA, Montana's version of the UEFJA, provides:

**Filing and status of foreign judgments.** A copy of any foreign judgment authenticated in accordance with an act of congress or the statutes of this state may be filed in the office of the clerk of any district court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of a district court of this state. <u>A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court of this state and may be enforced or satisfied in like manner.</u>

(Emphasis added.) Ian argues that the statute's language allows Montana district courts to provide Rule 60(b), M.R.Civ.P., relief to foreign judgments, and a plain reading of the statute indicates that the procedures, defenses, and proceedings for reopening or vacating a domestic judgment also apply to a registered foreign judgment.

¶41. Ian's interpretation of § 25-9-503, MCA, is contrary to the purpose and intent of the UEFJA. The UEFJA was enacted to implement the Full Faith and Credit Clause of the United States Constitution. The UEFJA provides the procedural framework for enforcing foreign judgments in the states that have enacted it. The UEFJA's purpose is to "facilitate interstate enforcements of judgments by providing a summary procedure by which a judgment creditor may enforce the judgment in an expeditious manner in any jurisdiction in which the judgment debtor is found." *Matson v. Matson* (Minn. 1983), 333 N.W.2d 862, 867. The UEFJA is to be "interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." Section 25-9-508, MCA. Considering these guideposts, this Court is required to construe the UEFJA in order to obtain uniformity with the rulings of sister state courts.

¶42. We disagree with Ian's interpretation that, under § 25-9-503, MCA, a foreign judgment duly filed in Montana can be subjected to the same defenses and proceedings for reopening or vacating as a domestic judgment, and remain consistent with full faith and credit. Rather, we hold that the only defenses that may be raised to destroy the full faith and credit obligation owed to a final judgment are those defenses directed at the validity of the foreign judgment. *See Durfee*, 375 U.S. at 110, 84 S. Ct. at 244, 11 L. Ed. 2d at 190 ("a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits--had jurisdiction, that is to render the judgment.")

Therefore, we determine that under § 25-9-503, MCA, certain defenses such as lack of personal or subject matter jurisdiction of the rendering court, fraud in the procurement of the judgment, lack of due process, satisfaction, or other grounds that make the judgment invalid or unenforceable may be raised by a party seeking to reopen or vacate a foreign judgment filed in Montana. These defenses have been recognized by other states that have held that the language similar to that found in § 25-9-503, MCA, does not allow the merits of a foreign judgment to be reopened or reexamined by the state where it is recorded. *Marworth*, 810 P.2d 653; *Matson*, 333 N. W.2d 862; *Rosenstein v. Steele* (Nev. 1987), 747 P.2d 230; *Morris Lapidus Associates v. Airportels, Inc.,* (Penn. 1976), 361 A.2d 660; *Wooster v. Wooster* (S.D. 1987), 399 N. W.2d 330; *Data Management Systems*, 709 P.2d 377.

¶43. Foreign judgments are properly accorded this deference to avoid offending the Full Faith and Credit Clause of the United States Constitution. In fact, Montana's version of the UEFJA recognizes this deference by defining a foreign judgment as "a judgment, decree, or order of a court of the United States or any other court which is entitled to full faith and credit in this state." Section 25-9-502, MCA.

¶44. Ian does not challenge the validity of the foreign judgment based upon lack of personal or subject matter jurisdiction of the Wyoming court, fraud in the procurement of the judgment, lack of due process, satisfaction or any other grounds that would make the Wyoming judgment invalid or unenforceable. Instead, Ian argues that the Wyoming judgment, obtained by default, should be set aside based on his excusable neglect in tending to the judicial proceedings there. He contends that his failure to file an answer to Patricia's complaint in Wyoming was excusable because he was engaged in negotiations to resolve the case and had filed a dissolution proceeding in the Montana District Court.

¶45. However, Ian's argument is based on the premise that a foreign judgment obtained by default and duly filed in Montana should be set aside because Montana law disfavors judgments obtained by default. *See, e.g., Waldher v. Federal Deposit Insurance Corp.* (1997), 282 Mont. 59, 62, 935 P.2d 1101, 1103 (In setting aside a default judgment obtained in a Montana district court, we stated "[t]he policy of law is to favor a trial on the merits."); § 25-9-101, MCA. Although excusable neglect might entitle a party to have a Montana default judgment set aside under Rule 60(b), M.R.Civ.P., it has no application here, since the judgment was rendered in Wyoming. During oral argument, Ian's counsel argued that there is a difference in public policy

between the states of Montana and Wyoming regarding the status and deference accorded to default judgments. As the United States Supreme Court has recently held, there is no public policy exception to the full faith and credit accorded to final judgments. *Baker by Thomas v. General Motors Corp.* (1998), 118 S. Ct. 657, 1390 L. Ed. 2d 580. Under the Full Faith and Credit Clause, we are obligated to give effect to the Wyoming judgment, even assuming the law underlying the judgment contravenes the public policy of Montana.

¶46. In this case, the default judgment was obtained in Wyoming. Ian, believing that his neglect and inadvertence were grounds to set aside the Wyoming judgment, must make his argument before the rendering court in Wyoming. *See Blair v. Blair* (1962), 140 Mont. 278, 287-88, 370 P.2d 873, 878 ("[T]his case is a collateral attack upon a foreign decree. Therefore jurisdiction for such attack is with the court wherein the judgment was rendered.").

¶47. In fact, during the appeal proceedings before this Court, Ian went back to the rendering court in Wyoming and attempted to set aside the default judgment based, in part, upon excusable neglect. The Wyoming court denied Ian's request, finding that he had failed to make the necessary showing to set aside the default judgment. Having lost before the Wyoming court, Ian cannot continue to litigate the same issues in Montana.

¶48. We conclude that the District Court did not err in denying Ian's motion to set aside the foreign judgment filed in Montana. The foreign judgment is entitled to full faith and credit in Montana. This Court recognizes that the foreign judgment is a final judgment, granting Patricia a valid divorce from Ian and an enforceable property division. Accordingly, we also conclude that the District Court did not err in granting Patricia's motion for summary judgment in Ian's dissolution proceeding.

¶49. Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

Justice James C. Nelson specially concurs.

¶50 I concur in our discussion of Issues 2 and 3. I concur in the result of Issue 1; I disagree with our rationale, however.

¶51 In our discussion of Issue 1 we hold that when a party has identified and titled a motion as one to alter or amend pursuant to Rule 59(g), M.R.Civ.P., this Court is not going to analyze the substance of the motion to see if it comes under the definition of a motion to alter or amend. I disagree with this rule.

¶52 In *Miller v. Herbert* (1995), 272 Mont. 132, 135-36, 900 P.2d 273, 275, we held that it is the substance of a document that controls, not its caption. Specifically, we stated: "We shall look to the substance of a motion, not just its title, to identify what motion has been presented." *Miller*, 272 Mont. at 136, 900 P.2d at 275. Our decision in *Miller* was in line with *Association of Unit Owners v. Big Sky* (1986), 224 Mont. 142, 148, 729 P.2d 469, 472, wherein we stated that "[w]e disregard that terminology in the title of the summons." More recently, in discussing *Association of Unit Owners*, we noted that "in [*Association of Unit Owners*] the content of the summons was more important than its title." *Yarborough v. Glacier County* (1997), 285 Mont. 494, 498, 948 P.2d 1181, 1183.

¶53 Notwithstanding this precedent, in *Moody v. Northland Royalty Co.*(Mont. 1997), 951 P.2d 18, 22, 54 St.Rep. 1317, 1320, we carved out an exception to the substance-controls-title rule for "documents which have procedural significance beyond the merits of their content." In those cases the title controls the substance of the document. The theory underlying this exception is that busy attorneys accord different amounts of "urgency" to documents depending upon how the document is labeled, *Moody*, 951 P.2d at 22, 54 St. Rep. 1320, with the presumed consequence that mislabeled documents will not be timely read or responded to. My disagreement with this decision will not be reiterated here. See *Moody*, 951 P.2d at 23, 54 St.Rep. at 1320 (Nelson, J., dissenting).

¶54 In the case at bar, we carve out yet another exception to the substance-controls-title rule. This exception might be denominated as the "Rule 59" exception. Under this exception, no matter what the practitioner puts in the motion, as long as it is properly labeled, we are not going to further analyze it as to content. The rationale for this latest exception is to assure movants that their motion will, if it is properly labeled, fall within

the framework of Rule 59--apparently even when the motion actually does not.

¶55 Thus, the substance-controls-title rule now seems to be: The substance of a document controls over its title unless the document has a procedural significance beyond the merits of its content or unless the document happens to be labeled as a Rule 59 motion in which case we don't care what the substance is. Hopefully this result-oriented approach will inspire the sort of confidence and certainty in the practice of law that its proponents suggest. Frankly, I doubt that it will. No amount of finessing the rules is going to save lawyers who habitually fail to read their mail; who fail to calendar mandatory response dates; who fail to timely answer discovery requests or obtain extensions; who conduct their practice in the eleventh hour; who ignore the requirements of the rules of civil and appellate procedure; and who take on more work and clients than they can responsibly and competently handle.

¶56 Rather, I respectfully suggest that in attempting to judicially craft these various exceptions, we are, to quote Oliver Wendell Holmes, Jr., "spend[ing] a great deal of . . . time shoveling smoke." Black-letter Montana law, § 1-3-219, MCA, requires that we respect form less than substance. Our decisions--majority and dissenting opinions and special concurrences alike--favorably espousing this principle are legion.[1] I submit that our precedent and Montana practitioners would be better served if we simply followed this law instead of re-creating the wheel to obtain the perceived preferred result in each case.

¶57 Using this approach, i.e., analyzing the substance of Ian's motion to alter or amend, I conclude that it was, in fact, what he labeled it. As the Court's opinion points out, in *Nelson v. Driscoll* (1997), 285 Mont. 355, 948 P.2d 256, we adopted established criteria under which a motion for reconsideration would be construed substantively as a motion to alter or amend pursuant to Rule 59(g), M.R.Civ.P. In so doing we cited to various authorities which have defined, substantively, what a motion to alter or amend is and is not. It is anomalous that we look to those criteria in determining the substance of a motion to reconsider, yet purposely ignore those same criteria where the issue is whether a motion labeled motion to alter or amend actually is what it purports to be.

¶58 In any event, contrary to the Court's head-in-the-sand approach, I conclude that Ian's motion was, in fact, a motion to alter or amend under the *Nelson* criteria. Specifically, his motion sought to correct what he believed was a manifest error of law, occasioned by the trial court failing to address and determine one of his three independent legal arguments for setting aside the Wyoming judgment. See *Nelson*, 285 Mont. at 360, 948 P.2d at 259 (a

motion to alter or amend is properly filed to, among other things, "correct manifest errors of law or fact upon which the judgment was based").

¶59 Accordingly, I agree with the result which the Court reaches in its discussion of Issue 1, but on the basis that Ian's Rule 59 motion was, in substance, a motion to alter or amend.

/S/ JAMES C. NELSON

Justice W. William Leaphart, specially concurring.

¶60 I specially concur with the Court's conclusion affirming the District Court's granting of Patricia's motion for summary judgment. I do not, however, agree with the Court's rationale in reaching that conclusion.

¶61 Montana's version of the Uniform Enforcement of Foreign Judgments Act (UEFJA), § 25-9-503, MCA, provides as follows:

**Filing and status of foreign judgments.** A copy of any foreign judgment authenticated in accordance with an act of congress or the statutes of this state may be filed in the office of the clerk of any district court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of a district court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court of this state and may be enforced or satisfied in like manner.

¶62 The language of the Act very clearly provides that a foreign judgment is subject to *reopening or vacating* on the same grounds as a judgment of the State of Montana. This language directly conflicts with the dictates of the Full Faith and Credit Clause of the United States Constitution which, as the Court recognizes, requires that "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Underwriters Assur. Co.*, 455 U.S. at 704, 102 S.Ct. at 1365 (citations omitted). It goes without saying that we cannot give the judgment in question the same credit and validity that it would have in Wyoming (its state of origin) and, at the same time, subject that judgment to reopening and vacating under the laws of Montana, including Rule 60(b), M.R.Civ.P.

¶63 The Court purports to resolve this conundrum by interpreting § 25-9-503, MCA, in

such a manner that the only defenses allowed under the UEFJA are those directed at the validity of the foreign judgment (e.g., lack of personal or subject mater jurisdiction, fraud in the procurement, lack of due process, satisfaction or other grounds that make the judgment invalid or unenforceable). In the interests of interpreting our UEFJA consistently with its purpose and with rulings from sister states, the Court holds that the language of § 25-9-503, MCA, "does not allow the merits of a foreign judgment to be reopened or reexamined by the state where it is recorded."

¶64 The consistency that has been achieved by the Court's interpretation is nothing short of legerdemain. No matter how harmonious our sister states may be in saying that the UEFJA does not allow vacating or reopening a foreign judgment, they cannot change the fact that the UEFJA provides that a foreign judgment shall be treated in the "same manner as a judgment of a district court of this state [Montana]." In the event more clarity is called for, the Act goes on to elaborate: "A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings <u>for reopening, vacating</u>, or staying as a judgment of a district court of this state . . . ." (Emphasis added.) With all due respect to the majority and the Uniform Code Commissioners, this language is only subject to one interpretation: that is, that a judgment from Wyoming, filed in Montana, is subject to *reopening or vacating* under the laws of Montana, including the excusable neglect provisions of Rule 60(b), M.R.Civ.P. In the words of Ralph Waldo Emerson: "A foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines." In creating a consistency where none exists, we have fallen prey to the hobgoblin and have joined the ranks of the little statesmen, philosophers and divines.

¶65 I would hold that § 25-9-503, MCA, is unconstitutional to the extent that it is inconsistent with the Full Faith and Credit Clause. That is, to the extent that it allows a foreign judgment to be reopened or vacated under the laws of another state.

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler specially concurring.

**¶66 I concur with the majority's conclusions that the appellant's notices of appeal were filed in a timely manner, that the appellant filed the correct motions in the District Court to invoke relief from the Wyoming judgment, and that those motions were timely.**

¶67 I concur with the majority's decision to affirm the District Court's denial of the plaintiff's motion to set aside the Wyoming judgment; however, I would affirm the District Court for reasons other than those offered in the majority opinion.

¶68 I disagree with the majority's conclusion, based on extraneous means of interpretation, that § 25-9-503, MCA, does not allow the appellant to attack a foreign judgment pursuant to Rule 60(b), M.R.Civ.P., on the same basis that he could attack a domestic judgment. The language of § 25-9-503, MCA, is plain on its face and provides, in relevant part, that a foreign judgment filed in this state, "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court of this state and may be enforced or satisfied in like manner." When a statute is plain on its face, our obligation is to apply it as it has been written, and not to resort to extraneous sources for purposes of construing what was intended by the authors of the statute. *State ex rel. Cobbs v. Montana Dep't of Social and Rehab. Servs.* (1995), 274 Mont. 157, 162, 906 P.2d 204, 207. Section 25-9-503, MCA, clearly provides that foreign judgments filed in this state can be attacked by the same procedures and for the same reasons as domestic judgments. The majority's reliance on what it concludes was the drafter's intent, to hold otherwise is contrary to our normal rules of statutory construction and application.

¶69 Having said that, however, I do not believe that the appellant has the right to challenge the Wyoming judgment repeatedly, and where he has already filed and lost the equivalent of a Rule 60(b) motion directly in the court where the judgment was entered, I would conclude that he is precluded by principles of *res judicata* from repeating that same challenge in a Montana court. The appellant did not appeal from denial of his post-judgment motion in Wyoming and, therefore, that judgment is as final as if it had been unsuccessfully challenged in Montana pursuant to § 25-9-503, MCA.

¶70 Because, as the majority recognizes, the appellant has already been unsuccessful in having his default judgment set aside in the Wyoming court based upon excusable neglect, I do not believe it was necessary for this Court to interpret § 25-9-503, MCA, as it has in order to affirm the District Court.

¶71 Furthermore, even though the plain language of § 25-9-503, MCA, authorizes the appellant's action in the Montana District Court to set aside the Wyoming judgment

pursuant to Rule 60(b), M.R.Civ.P., I would conclude that the authority to authorize such a challenge is preempted by 28 U.S.C. § 1738 which requires that foreign judgments be given the same effect they would be given in the state from which they originated. In other words, the federal standard for attacking a foreign judgment requires that its validity be considered based on the law of the state where it originated. Montana law provides that foreign judgments are subject to attack for the same reasons that domestic judgments would be subject to attack. The two standards are inconsistent and the federal law has preemptive effect.

¶72 The supremacy clause of the United States Constitution provides that "[t]his constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. Interpretation of the supremacy clause has created the doctrine of federal preemption, pursuant to which state laws that conflict with federal law are preempted and "without effect." *See Maryland v. Louisiana* (1981), 451 U.S. 725, 746, 101 S. Ct. 2114, 2128-29, 68 L. Ed. 2d 576, 595.

¶73 Neither do I agree with the concurring opinion of Justice Leaphart that § 25-9-503, MCA, is unconstitutional in violation of the full faith and credit clause found in Article IV, Section 1, of the United States Constitution. I believe that the full faith and credit clause simply requires that Montana give the same effect to foreign judgments that it would give to domestic judgments and that is what the plain language of § 25-9-503, MCA, does. *See, e.g., Phares v. Nutter* (Ariz. 1980), 609 P.2d 561. However, the full faith and credit clause also authorizes Congress to expand on the effect to be given to foreign judgments and that is what it did when it enacted 28 U.S.C. § 1738.

¶74 For these reasons, I concur with the result arrived at by the majority, although I do not agree with all that is said in the majority opinion.

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., joins in the foregoing concurring opinion.

/S/ WILLIAM E. HUNT, SR.

1. [1] A lengthy string-cite to the cases would serve no particular purpose except to take up space. I suggest that if

Nos

the reader performs an electronic search of Montana case law using the query "form over substance" he or she will locate over six dozen opinions of one sort or another citing this maxim.